(No. 15326.—Rule discharged.)

THE PEOPLE *ex rel.* The Chicago Bar Association, Relator, *vs.* ROBERT EDELSON *et al.* Respondents.

*Opinion filed October 28, 1924.*

1. DISBARMENT—*when findings of commissioner are conclusive.* Where no exceptions are filed to the report of the commissioner and neither side brings up the evidence the commissioner's findings of fact are conclusive.

2. SAME—*what solicitation is unprofessional.* The solicitation of business by personal communications not warranted by personal relations is unprofessional, and so is the volunteering of advice to engage in litigation.

3. SAME—*when soliciting claim for purpose of filing petition in bankruptcy is not unprofessional.* It is unprofessional for an attorney having no interest to advise the filing of a petition in bankruptcy or to solicit claims for that purpose, but if he is interested, by reason of his employment to collect a claim for a client, he may solicit other claims in order to authorize the filing of a bankruptcy petition, provided his action is primarily to secure his client's claim and not to secure fees for himself.

INFORMATION to disbar.

JOHN L. FOGLE, for relator.

JOHN J. HEALY, and ARTHUR C. BACHRACH, for respondents.

Mr. JUSTICE DUNN delivered the opinion of the court:

Pursuant to leave granted, an information was filed on the relation of the Chicago Bar Association against Robert Edelson and Albert J. Goldberg, charging them with dishonorable and unprofessional conduct in the filing and prosecution of an involuntary petition in bankruptcy. The information was answered and the cause was referred to a commissioner, who has made a report of his findings, to which no exceptions have been filed by either side. Neither side has brought up the evidence, but the relator has moved to suspend the respondents, and the respondents to discharge the rule. The cause is therefore submitted for judgment on the findings of the commissioner, whose findings of fact under such circumstances are conclusive.

The information charged that on November 25, 1921, the Chicago Baling Press Manufacturing Company was a going and solvent corporation, with assets of about $30,000 and debts not exceeding $14,000; that because of unfavorable business conditions it was having difficulty in meeting the demands of creditors, but on September 7, 1921, all its principal creditors had agreed to accept its notes, due in one year; that respondents had no claims for collection against the corporation, but learning of its financial troubles caused an involuntary petition in bankruptcy to be filed against it for the purpose of obtaining attorneys' fees; that the petition was signed by Louis H. Rosenblum, a clerk in respondents' office, as agent for three creditors of the baling press company without authority from them or knowledge of the facts about their claims; that the petition was filed at 4:45 P. M. on November 25, 1921, and after the close

of the place of business of the baling press company the respondents on the same day caused a notice to be left under the door stating that on the next morning they would appear before the district court and ask for the appointment of a receiver; that at that time Charles R. Holton, the attorney for the baling press company, was absent from the city of Chicago, and someone from his office appeared before the district court at the time the respondent Edelson presented a motion asking for a temporary receiver, and thereupon the motion was continued from Saturday morning, November 26, until Tuesday, November 29; that notwithstanding the continuance the respondents procured the appointment of a receiver on Monday, November 28, by some unknown method during the absence of any representative of the baling press company; that the receiver was discharged by the court on December 21, 1921, but the business of the company was injured beyond any repair by reason of the bankruptcy proceeding and the sending out of letters to its creditors; that the respondents were guilty of solicitation of claims against the baling press company to creditors whose names they obtained from the books of the company in the possession of the receiver, and the respondents, together with other attorneys, followed this practice for the purpose of controlling the appointment of the trustees in bankruptcy proceedings, with a view of procuring fees for themselves and their friends.

It appears from the master's findings that Robert Edelson was licensed as an attorney at law in 1910 and Albert J. Goldberg in 1920, and in the fall of 1921 they were associated, together with H. J. Paullin, in the practice of law in the city of Chicago under the firm name of Edelson, Paullin & Goldberg, and that Louis H. Rosenblum was in the employ of the firm as a law clerk. He was about twenty-five years old, had studied law for more than a year at the Northwestern University law school and had had considerable business experience in various kinds of com-

mercial business. About September 10, 1921, William Mc-Cauley placed in Rosenblum's hands for collection a claim for $27.57 against the Chicago Baling Press Manufacturing Company for teaming, and on the same day Rosenblum visited the office of the company. No one was working in the plant, but the superintendent, Saunders, was in the office. He discussed the financial business of the company with Rosenblum and conducted him about the building for the purpose of showing the company's equipment and stock. Saunders told Rosenblum that he would inform the president of the company of the fact that Rosenblum had the account for collection, and he disclosed to Rosenblum the names of some of the company's creditors, among them Frank Olson, the Link Belt Company and Elmer Ellingston. He also told Rosenblum that Frederick G. Manuel, the president of the company, had secured or was endeavoring to secure a year's extension of the claims of the creditors and to raise some money to meet current expenses and bills. Rosenblum called again a week later and had a further talk with Saunders and called at the plant on other occasions but found it closed.

The Chicago Baling Press Manufacturing Company was incorporated in 1919 for the purpose of manufacturing certain baling presses to be used in baling scrap iron and waste material. It took over a business that had been owned and conducted by Manuel. The capital stock was $35,000, of which Manuel subscribed for $24,000, paying for it with his business and equipment of the value of $23,000 and $1000 in cash. Five thousand dollars of the stock was taken by Maxwell C. Tobias, who became the secretary of the company, and later, with some members of his family, took the additional amount of $3500, leaving $2500 of stock not issued. In the latter part of 1920 the company employed about twenty persons, but in 1921 there was a falling off in business and it was unable to sell its machines. Three of them, which had been sold for $13,000 each, were

returned, and the three were afterward sold for less than $13,000. In March and April, 1921, the company had but four employees, in June and July only two, and afterward only one or two at times. On November 25 it owed $24,000, which included indebtedness to Manuel and Tobias for their salaries and for money loaned of approximately $8000. Its assets consisted of machinery and tools, stock of goods and furniture, its accounts receivable, not exceeding $200, with no cash on hand and little or no money in the bank. The machinery, tools and fixtures were afterward sold on May 16, 1922, by the receiver appointed by the circuit court of Cook county for $2104.12, and no appreciable change had occurred before that time with respect to the character or condition of the machinery and fixtures. The fair valuation of all the assets of the company did not exceed $6000. In the early part of September, 1921, Manuel was arranging with his larger creditors for an extension of their claims for one year, and the majority of them had signed an agreement for such an extension. Their claims were from several months to a year past due and the company was unable to pay any of its debts. McCauley's claim was about nine months past due and was undisputed.

A short time before November 25, 1921, Rosenblum solicited the claims of Frank Olson, the Link Belt Company and Elmer Ellingston for the purpose of securing creditors sufficient in number and amount to enable him to file an involuntary petition in bankruptcy. He had received information of these claims from Saunders. They were undisputed and past due, but Olson had signed an extension of his claim for one year. The question of Rosenblum's authority to sign the names of Olson and Ellingston to the petition in bankruptcy is in dispute. The claim of the Link Belt Company had been in the hands of the law firm of Culver, Andrews & King for collection. They had been unable to collect it and were familiar with the financial situation of the company. Charles J. Clusman, an attorney

in the employ of that firm, turned the claim over to Rosen-
blum for the purpose of being used in filing the petition in
bankruptcy, and the commissioner found that Rosenblum
was warranted by the authority given him by Clusman in
using the claim for that purpose. A few days before filing
the petition Rosenblum communicated with Frank Olson
regarding his claim against the Chicago Baling Press Man-
ufacturing Company and told him of the precarious financial
condition of the company and of Rosenblum's intention to
institute bankruptcy proceedings. Rosenblum testified that
he fully explained to Olson the necessity of three creditors
joining in the application, and Olson stated to him that the
amount of his claim was about $700; that it was an old
one and that Rosenblum might use it. Olson testified that
he had two conversations with Rosenblum over the tele-
phone, and in the first told Rosenblum that he wanted to
consult with the Jones Foundry Company, another creditor,
before he would take any action, and in the second con-
versation he told Rosenblum that he would not permit the
use of his claim in a bankruptcy proceeding. The com-
missioner found that no authority was given by Olson to
Rosenblum for the use of his claim in the bankruptcy pro-
ceeding. Rosenblum also attempted to telephone to Elling-
ston in order to secure his claim but was unable to get
in communication with him. He left the request with the
person who answered his call that Ellingston communicate
with the firm of Edelson, Paullin & Goldberg, and Elling-
ston called up their office and had a conversation with
Goldberg, who gave Ellingston such information as he ob-
tained from Rosenblum in regard to the financial affairs of
the baling press company and told him of the necessity of
having three creditors to join in the bankruptcy petition.
Ellingston told him that he would mail a statement of his
claim and was willing that it be used for the purpose of
filing the petition. The statement of the claim was mailed
by Ellingston and received at the office of Edelson, Paullin

& Goldberg the next day.   Ellingston admits having the
conversation with Goldberg, but testified that a receiver had
already been appointed and Goldberg requested a statement
of the claim for the purpose of attending to its collection.
The finding of the commissioner is that Goldberg in good
faith believed that Ellingston had granted the necessary
authority to use his claim in the bankruptcy proceeding.

Neither of the respondents made any personal investi-
gation of the affairs of the Chicago Baling Press Manu-
facturing Company.   Edelson had no active connection with
the bankruptcy proceeding and performed no personal ser-
vice in the case, except that he appeared on the application
for the appointment of a receiver on November 26 and No-
vember 29.   The involuntary petition in bankruptcy signed
by Rosenblum as agent for the three creditors, Olson, El-
lingston and the Link Belt Company, was filed on Novem-
ber 25, and notice that a receiver would be asked for in
the proceeding on November 26 was left under the door of
the baling press company after the close of business.   In
response to the notice some one from the office of Charles
R. Holton, attorney for the baling press company, appeared
and asked that the application be continued until Novem-
ber 29, 1921, because of Holton's absence from the city.
The continuance was agreed to and the motion was contin-
ued.   By mistake the hearing on the motion was entered
continued until November 28 instead of November 29, and
the order of continuance was printed and appeared in the
*Chicago Daily Law Bulletin* of November 26.   That day
was Saturday, and Edelson having left his office had no
notice of the error that had occurred with reference to the
continuance.   Goldberg noticed the order appearing in the
*Bulletin,* and on the following Monday morning, Novem-
ber 28, during the absence of Edelson, appeared in the
bankruptcy court to look after the motion.   The motion was
called, and no one appearing for the baling press company,
Goldberg suggested the appointment of a receiver, and the

court appointed the Central Trust Company of Illinois receiver without any suggestion by Goldberg as to who should be appointed. Edelson appeared in court on Tuesday, November 29, and there met Holton, the attorney for the baling press company. On the failure of the clerk to call the motion, inquiry was made and it was found the receiver had been appointed the day before. Edelson expressed his surprise and offered to have a hearing on the question of appointment at any time Holton would suggest, and Holton at that time replied he would give the matter further consideration and would take it up at a later time. An application to discharge the receiver was not made until December 21, 1921, when a motion for that purpose and to dismiss the bankruptcy proceeding was presented and heard. At that hearing Olson and Ellingston both testified, and each denied that Rosenblum had been given any authority by them, respectively, to sign their names to the petition and no authority had been given to the firm of Edelson, Paullin & Goldberg to represent them as attorneys in filing or prosecuting the petition. The commissioner found that neither of the respondents was guilty of bad faith or improper conduct with respect to procuring the appointment of a receiver.

It was a common practice among attorneys practicing largely in the bankruptcy court prior to filing the petition in bankruptcy against the Chicago Baling Press Manufacturing Company, to solicit claims against the defendants in such bankruptcy proceedings for the purpose of controlling the election of trustees of the bankrupt estate, and on or about May 16, 1922, the chairman of the committee on professional ethics of the Chicago Bar Association by letter of that date called the attention of the respondents to their violation of canon 27 of the code of ethics of the American Bar Association in soliciting claims against a bankrupt in a case filed by them as attorneys. About the same time the attention of other attorneys was called to simi-

lar violations.   The respondents replied to the letter and made explanation of the circumstances involved in the case and disclaimed knowledge of committing a violation of canon 27, but in their letter, and in another letter written by them on March 26, 1922, expressed their willingness to comply with the canon and refrain from any further violation of it.   These letters were written by Edelson, and at that time Goldberg was no longer associated in business with him, and since then neither one of the respondents has solicited claims of creditors in any bankruptcy proceeding.   After the dismissal of the bankruptcy proceedings the respondents paid the costs of the receivership, amounting to $338.18, and also paid to the baling press company the sum of $500 in settlement of any civil liability to the company arising out of that proceeding.   During the three years prior to December, 1922, the respondents filed twenty-four involuntary bankruptcy proceedings and no evidence was given of any irregularity in any of them other than that of the baling press company, except that in five or six instances letters were written to creditors of the defendant in bankruptcy after the filing of the petition, soliciting their claims in the manner hereinbefore stated.   Evidence was produced before the master of the good reputation of the respondents for honesty, truth, veracity and as reputable members of the Chicago bar.

So far as the appointment of the receiver is concerned, the commissioner found that neither of the respondents was guilty of bad faith or unprofessional conduct.   The premature hearing of the motion for the appointment of a receiver in the absence of the company's counsel grew out of a mistake for which they were not responsible.   Whether notice of the hearing on November 26 was given or not, there was an appearance by the company's attorney and an agreement for a continuance.   The error in entering the order for a continuance was not one for which the respond-

313–39

ents were answerable,—it was made by the clerk. Goldberg had no personal knowledge of the matter when he saw the notice in the *Bulletin,* and in the absence of his partner, Edelson, he appeared to attend the hearing. When Edelson the next morning learned that the motion had been disposed of and the receiver appointed on the day before, he made no claim under the order and immediately notified Holton that he would consent to a hearing at any time Holton wished, and there was a hearing on December 21, when the receiver was discharged and the petition in bankruptcy was dismissed.

The finding of the commissioner is that Rosenblum was not authorized to sign the petition on behalf of Olson or Ellingston, but it does not follow from this finding that the respondents were guilty of unprofessional or dishonorable conduct in filing the petition. There is no finding that the respondents had any reason to suspect Rosenblum's integrity. His reputation, so far as appears, was good, and they were justified in relying on his representations as to the financial condition of the company, as to the claim of McCauley, and as to Rosenblum's statements that he had obtained the claims of the Link Belt Company and Olson for the purpose of filing the petition in bankruptcy. The commissioner found that Rosenblum's purpose in soliciting these claims was to secure sufficient creditors in number and amount to enable him to file such petition.

The solicitation of business by personal communications not warranted by personal relations is unprofessional, and so is the volunteering of advice to engage in litigation. The Bankruptcy act requires, as a condition to filing an involuntary petition in bankruptcy, that three creditors whose total claims aggregate $500 must join in the petition. It is unprofessional for an attorney having no interest to advise the filing of a petition in bankruptcy or to solicit claims for that purpose, but it is not necessarily unprofessional for an attorney, interested by reason of his employment to

collect a claim for a client, to solicit a claim for the purpose of having creditors sufficient in number and in amount to authorize the filing of a petition in bankruptcy. An attorney having a claim which it is his duty to collect should not be debarred from soliciting other claims, in order to procure creditors sufficient in number and amount to authorize the filing of a petition in bankruptcy, on the ground that such solicitation is unprofessional. To do so might deprive him of the only available means of collecting the claim which he has. The motive of the solicitation was important in determining the propriety of the action. If it was to begin litigation in order to enable the respondents to secure fees for themselves the action was unprofessional and dishonorable; if it was to secure their clients' claims it was not unprofessional or dishonorable. If they believed in good faith that they were authorized to represent the petitioners in bankruptcy and their action was taken to secure the latters' claims such action was not unprofessional. The reputation of the respondents is to be taken into consideration as well as the practice observed by the profession generally in the matter involved. The respondents were not bound to distrust their clerk and undertake an independent investigation of the authority which he represented himself to have, in the absence of any reason to suspect him of some impropriety. Their response to the notice from the committee of the bar association promising to observe the requirements of the canons and their subsequent faithful observance of them, together with their prompt adjustment of the civil liability arising out of the wrongful act of their employee, must also be taken into consideration, and their conduct as shown by this record does not indicate a lack of the honesty, good moral character or professional standards which requires the forfeiture of their licenses to practice law.

The rule will be discharged.    *Rule discharged.*