(No. 19493.

THE PEOPLE *ex rel.* The Chicago Bar Association, Relator, *vs.* HENRY M. ASHTON, Respondent.

*Opinion filed February 19, 1932—Rehearing denied April 6, 1932.*

JOHN L. FOGLE, for relator.

EDWARD M. WINSTON, IRWIN N. WALKER, and STUART B. KROHN, for respondent.

Mr. JUSTICE JONES delivered the opinion of the court:

The relator, the Chicago Bar Association, filed an information in this court for the disbarment of Henry M. Ashton, the respondent. The cause was referred to a commissioner to take the evidence and report his conclusions. After the evidence had been taken the commissioner died before making a report. The cause was referred to another commissioner, with directions to consider the evidence taken by the first commissioner and make a report thereon. The commissioner found that the respondent should not be disbarred, but also found that if his conduct merited some other form of discipline the matter should be submitted to this court for such action as it might deem proper. The relator filed exceptions to the findings.

The facts found by the commissioner are not in serious dispute and are substantially as follows: The respondent was licensed to practice law in 1899 and has practiced in Chicago ever since. During the year 1920 he shared an office with another attorney. Certain persons who had claims against the Industrial Loan and Guaranty Company on account of stock subscriptions consulted the latter attorney and were told by him that an investigation would entail considerable expense and that their claims were not large enough to justify his handling the litigation. He recommended the respondent as a competent attorney to handle it. These stockholders conferred with the respondent and he suggested that they procure four or five of their neighbors who had claims of similar kind to participate in the litigation. Such additional clients were obtained by the stockholders. Although the other attorney had at first declined employment, it appears he became interested in the litigation and with the respondent engaged Harry E. Austin, an acquaintance and friend of the respondent, to solicit stockholders to employ them in the enforcement of claims against said corporation. The exact terms of the employment are in dispute, but it is agreed that Austin was to receive compensation out of the money collected through the litigation. Pursuant to his employment Austin began the solicitation of stockholders to employ said attorneys. As an effective means of persuading stockholders he engaged desk room in an office at 138 North LaSalle street, Chicago, and with the assistance of the respondent prepared, and caused to be printed, letter-heads with the following heading: "Investors Protective Bureau—Special Financial Reports on Unlisted Securities—Room 50-52, 138 North LaSalle street, Chicago." Cards of similar import were also printed and distributed.

Austin and the respondent also prepared two form letters which were sent to the stockholders. The first letter was dated November 24, 1920, and stated that the stock-

holders' committee had made an investigation of the corporation and found its financial condition and methods of doing business were wholly unsatisfactory; that a plan had been devised to compel the return of the full amount paid in by each subscriber who would join this committee, and that if the stockholder desired further information and wished to protect himself immediate action was necessary. The stockholder was requested to call at the office and bring full and complete information with reference to his dealings with this company. The second letter was dated January 5, 1921, and told the stockholders that a suit had been filed by fourteen stockholders to have a receiver appointed for the company and that the suit had been brought by attorneys employed by the bureau, acting for the claimants. The letter further stated that it was the claim of the stockholders that the stock was sold to them through false representations; that the company had never made any profits; that over $500,000 in money of the corporation was invested in the common stock of the Trustees System Service Corporation; that this stock was worthless; that the companies operating under the name of the Trustees System Service Corporation owed banks in Chicago and other cities over $300,000 for money borrowed, and that the whole business of the service corporation was conducted in a fraudulent way.

Austin and the respondent prepared an agreement to be signed by any stockholder who wished to join in the suit. It recited that the stockholder had employed the Investors Protective Bureau to represent him in the claims which had been filed against the Industrial Loan and Guaranty Company for money paid for stock issued to the subscribers; that the stockholder had paid to said bureau ......... dollars, being five per cent of the amount of his claim against said corporation; that said sum was to cover all costs of investigation of the affairs of the company; that in case it is necessary to employ an attorney to collect the claims

the bureau may contract in the name of the stockholder to pay a reasonable fee to such attorney for his services; that if the claim is collected by the bureau the stockholder shall pay the bureau a reasonable fee for such collection, but no further charges are to be made to the stockholder unless the collection is made; that no settlement of any claim shall be made for less than the full amount without such proposition first being submitted to and approved by the stockholder, and that H. E. Austin is authorized to sign for the stockholder all papers that may be necessary in order to properly prosecute the claim.

Through the efforts of Austin a number of stockholders employed the respondent and a suit was brought. The case was tried and decided in favor of the complainants. Subsequently a settlement was made whereby the complainants received the full amount paid by them for their stock, together with $5000 as solicitor's fees. Austin was engaged in this work for three or four months preceding the filing of the bill. The respondent spent four weeks in the actual trial of the case. The details of the settlements and the disbursements of the funds by the respondent are as follows:

```
"Amount collected and total of claims...................$14,000
Fees for trial of case.....................................  5,000
        Total.........................................  $19,000
Amount paid to stockholders.........        $9275.63
Amount paid to said office associate:
    One-half of solicitors' fees........$2500
    One-third of fees charged for col-
        lection of claims............... 1221
                                        ────────
                                         3721.00
Amount paid to Austin...............     2505.09
Amount retained by respondent.......     2505.09
Amount paid for court costs, stenogra-
    phers' fees, and other expenses of
    litigation . . ......................      993.19
                                      ──────────  ──────────
                                      $19,000.00   $19,000"
```

The $2505.09 paid to Austin was in addition to the $500 which he collected from clients before the suit was

filed. About $100 of this amount Austin paid in office expenses. Upon settlement with the various stockholders the respondent reimbursed the stockholders in the amount they had paid to Austin for costs.

The relator first charges that the respondent violated canons 27 and 28 of Professional Ethics by the "solicitation of business" and by "stirring up litigation." Canon 27 as adopted by the Chicago Bar Association, the Illinois State Bar Association and the American Bar Association provides in part: "Solicitation of business by circulars or advertisements, or by personal communications or interviews not warranted by personal relations, is unprofessional. It is equally unprofessional to procure business by indirection, through touters of any kind." Canon 28 provides: "It is unprofessional for a lawyer to volunteer advice to bring a lawsuit, except in rare cases where ties of blood, relationship or trust make it his duty to do so. Stirring up strife and litigation is not only unprofessional but it is indictable at common law. It is disreputable * * * to breed litigation by seeking out those with claims for personal injuries or those having any other grounds of action in order to secure them as clients, or to employ agents or runners for like purposes. * * * A duty to the public and to the profession devolves upon every member of the bar having knowledge of such practices upon the part of any practitioner, immediately to inform thereof to the end that the offender may be disbarred."

The commissioner found that the expense entailed in conducting the contemplated chancery proceedings made it necessary for the respondent to solicit the business of the stockholders. The evidence shows that the first stockholders to talk to the respondent relative to their claims came without solicitation on his part. Their claims were small and they would have been unable to bear the expense of the litigation. In *People* v. *Edelson,* 313 Ill. 601, it was held that an attorney having a claim which it is his duty to

collect should not be disbarred for soliciting other claims in order to procure creditors sufficient in number and amount to authorize the filing of a petition in bankruptcy. It was there stated that the motive of the solicitation is important in determining the propriety of the action, and that if litigation is begun in order to secure a claim such solicitation is not unprofessional.

Solicitation of business by an attorney, even where it is in aid of the interest of his clients, is a delicate matter and must be conducted with great circumspection and regard for the proprieties of the situation. The motives of the attorney must be apparently fair and his conduct must be above board and without misrepresentation or deceit. In this case the letters sent out to stockholders do not evidence an ethical solicitation of business. The Investors Protective Bureau was a mythical organization, and the character of its business, as expressed in its letter-head, "Special financial reports on unlisted securities," was false and misleading. Neither Austin nor the lawyers were engaged in making financial reports on unlisted securities generally. The entire scheme was to attract stockholders in the Industrial Loan and Guaranty Company only. No stockholders' committee had been formed and there was none for the solicited stockholders to join. We cannot escape the conclusion that the so-called Industrial Protective Bureau was a blind or screen to deceive unwary stockholders and was created for the sole purpose of aiding an unwarranted solicitation of business for pecuniary profit.

The unwarranted solicitation of business by the respondent, together with the fraudulent imposition upon the stockholders through means of the spurious letter-heads and other communications employed by him, are in direct contravention of the recognized Canons of Professional Ethics. It is therefore the judgment of the court that the respondent be suspended from practice as an attorney for a period of one year. *Respondent suspended.*