Roger O. **HALVERSON** et al., Plaintiffs-Appellants,

v.

**CONVENIENT FOOD MART, INC.,**
et al., Defendants-Appellees.

No. 71–1195.

United States Court of Appeals,
Seventh Circuit.

April 5, 1972.

---

Donald C. Gancer, Charles E. Eklund, John T. Kennedy, John O. Demaret, Chicago, Ill., Querrey, Harrow, Gulanick & Kennedy, Chicago, Ill., for plaintiffs-appellants.

Harry G. Fins, Earl A. Jinkinson, Charles C. Kirshbaum, Barry L. Kroll, Edward J. Wendrow, John W. Stack, Chicago, Ill., for defendants-appellees; Winston, Strawn, Smith & Patterson, Chicago, Ill., of counsel.

Before KNOCH, Senior Circuit Judge, and STEVENS and SPRECHER, Circuit Judges.

SPRECHER, Circuit Judge.

This appeal presents the novel question of the effect of a lawyer's communications with potential class members on a subsequently filed class action.

Plaintiffs are the owners of some 36 separate businesses operating retail grocery stores under franchise agreements with defendant Convenient Food Mart, Inc. Defendant Scot Lad Foods, Inc., through its Meadowmoor Dairy subsidiary, markets milk and related dairy products and defendant Bresler Ice Cream Co. sells ice cream. Plaintiffs allege that Meadowmoor and Bresler each own 50 percent of Convenient's outstanding stock.

The complaint alleged that Convenient, through its franchise agreements with plaintiffs and other franchisees, has conspired with Meadowmoor and Bresler to restrain and monopolize inter-

state trade in violation of sections 1 and 2 of the Sherman Act and section 3 of the Clayton Act.[1] The instruments of the alleged violations are exclusive-dealing clauses which require franchisees to buy and sell specified products from suppliers designated by Convenient. Meadowmoor is the designated supplier of dairy products and Bresler, of ice cream. Plaintiffs also allege the use of an advertising fund, to which they must contribute 1 percent of gross sales, in furtherance of defendants' "captive market" scheme. The complaint suggested that defendants receive rebates from advertisers and suppliers of general merchandise whom they require the franchisees to patronize.

In addition, plaintiffs alleged violations of 15 U.S.C. § 13(c) by virtue of Convenient's dual representation as agent both for plaintiffs and for Meadowmoor and Bresler.

The complaint was brought on behalf of the named plaintiffs and on behalf of all Convenient franchisees, many of whom are outside the Chicago area, and all persons who were franchisees as of July 1, 1960, but had since lost their franchises. With the complaint was filed the affidavit required by Rule 39 of the rules of the Northern District of Illinois that plaintiffs' lawyer had not solicited the case.

During pretrial proceedings, one of the attorneys for defendants suggested to the trial judge that the plaintiffs had been solicited. The judge ordered a hearing, at which the facts described below were elicited. On motion of defendants, the judge dismissed the entire case. It is not clear from his announcement of dismissal whether his reason was an ethical breach by plaintiffs' lawyer, a violation of local Rule 39, inadequate or unfair representation of the class under Rule 23(a) (4), Fed.R.Civ. P., or some unidentified omission from the complaint.[2]

I

A short history of the relationship between plaintiffs and their lawyer will help in evaluating his supposed misconduct. In 1968 about 75 of the 80 Convenient franchisees in the Chicago area formed an association for purposes of dealing with Convenient on complaints and problems. The association's steering committee retained a lawyer and asked him to negotiate with Convenient for advertising rebates, which were provided for in the franchise agreements but had not been received by franchisees. As a result of his efforts, Convenient in August 1969 distributed advertising allowances accrued since January 1, 1969, to all Chicago-area franchisees.

---

1. 15 U.S.C. §§ 1, 2 and 14.

2. The court said: "The issue is . . . whether or not you have proceeded to bring a class action in the proper manner according to Rule 23 . . . [which] does not contemplate the solicitation of members of the class by the representatives of the class."

After describing the Rule 23 procedure for notification of the class under court supervision, the court said: "This is a procedure which makes it unnecessary and prevents organizations or members or persons who assume to be representatives of the class, and particularly prevents the lawyers themselves, from having to go out and seek others to join in, to bring the class action."

As to the complaint itself, the court said: "[M]ore than that, the allegations contained in the complaint and the requests for relief which have been tendered, have been acknowledged by the plaintiffs, when met by offers by the defendants, are found not to be included in the express language of the franchise agreement to begin with, such acknowledgments if before the Court in written and verified answers to requests for admissions, would justify a motion for summary judgment on behalf of the defendants in the first place."

As to local Rule 39, the court said: "[I]t is my sincere belief that counsel didn't understand that in class actions such conduct can cause him to conflict with the local rules of court."

As to his dismissal of the entire case, the court said: "[I]f the manner in which a class action has been brought is violative of the rule [23], it is clearly within the prerogative of the Court . . . to dismiss . . . the case, on the ground that it has been improperly brought as a class action."

Thereafter, the rebates were made on a monthly basis; the total payment to Chicago franchisees was $20,000 annually. Convenient also sent the association a check for attorney's fees, which it turned over to the lawyer.

There was little further contact between the association and the attorney until December 1969, when an officer invited him to a meeting where 31 members were in attendance. There he discussed with the members the possibility of bringing an antitrust suit against Convenient. The lawyer said he would want written authorization from franchisees who would be named plaintiffs. He also asked for a one-third contingent fee and it was agreed that the association would pay the costs. After the lawyer left, all members in attendance voted in favor of a suit.

When the association president called the attorney the next day, they discussed sending out a letter over the president's signature with a request for other store owners to join as named plaintiffs. The letter was prepared and typed in the lawyer's office, sent to the president to sign, then photocopied and prepared for mailing in the lawyer's office.[3] The letter did not discuss costs, but said there would be no fee if the suit were unsuccessful. It was accompanied by an authorization form, to be filled out and returned by the franchisee.

The letter was mailed to all 80 Chicago-area franchisees. From 55 to 65 were then active members of the association. The persons who signed and returned the authorizations became the named plaintiffs.[4]

The first question is whether the lawyer for the plaintiffs committed a breach of ethics in this pre-filing solicitation of potential class members.

The applicable section of the American Bar Association's Code of Professional Responsibility (1969) is DR2-104(a):

"A lawer who has given unsolicited advice to a layman that he should obtain counsel or take legal action shall not accept employment resulting from that advice, except that:

"(1) A lawyer may accept employment by a close friend, relative, former client (if the advice is germane to the former employment), or one whom the lawyer reasonably believes to be a client."

The critical inquiry here is, who could the lawyer reasonably believe to be his client? Defendants argue that his original client was the association, not its members, so that communication with individual franchisees was forbidden. But the association was an unincorporated, informal organization with the sole purpose of furthering the common interests of its members. Its first project is an example: the association enforced the advertising-allowance provision that was in each member's franchise agreement. It did not limit its efforts to its members' interests inasmuch as it demanded and received rebates for every Chicago-area franchisee. The attorney's fee was deducted from the advertising fund before it was distributed to the beneficiaries; each franchisee thus contributed to the fee.

Because the lawyer in effect had represented and benefited every franchisee, he could reasonably believe each one of them was his client. A closely analogous situation is found in ABA Comm. on Professional Ethics Opinions, No. 7 (1925). A lawyer who had done much valuable work for the Osage Indians was not disciplined for sending letters to individual tribe members soliciting their income-tax business.

■ Even if the nonmember franchisees could not reasonable be considered

---

3. The lawyer had been handling all mailing for the association, since it did not have duplicating facilities.

4. Ordinarily this would be an unnecessary precaution. As the district court noted:

"It is sufficient if one person walks into the court and says that, 'I am a representative of the class,' and by his pleadings defines what that class is."

to be clients, there is authority which would condone the pre-suit communication. A lawyer whose client will benefit from joinder of others similarly situated may seek out claimants if his motive is not to secure fees for himself. People ex rel. Chicago Bar Ass'n v. Edelson, 313 Ill. 601, 145 N.E. 246 (1924); People ex rel. Chicago Bar Ass'n v. Ashton, 347 Ill. 570, 180 N.E. 440 (1932); ABA Comm. on Professional Ethics, Opinions, No. 111 (1934); N.Y. City Bar Ass'n, Comm. on Professional Ethics, Opinions, No. 717 (1948); N.Y. County Bar Ass'n, Comm. on Professional Ethics, Opinions, No. 47(V) (1914) and No. 228 (1924). In a class action the number of named plaintiffs ordinarily has no bearing on the amount of the fee.[5]

These opinions predate the 1966 amendments to Rule 23 restricting post-filing communications with class members to court-approved notices. However, the current view of the ABA is found in code section DR2–104(A) (5): "If success in asserting rights or defenses of his client in litigation in the nature of a class action is dependent upon the joinder of others, a lawyer may accept, but shall not seek, employment from those contacted for the purpose of obtaining their joinder." A law review article suggests that an attorney should be able to suggest to his clients that *they* solicit others to "firm up" the class before a determination under Rule 23, in order to accomplish the basic purpose of the rule. "Federal Rule 23: A Device for Aiding the Small Claimant," 10 B.C. Ind. & Com.L.Rev. 501, 514 n. 64 (1969).[6]

We do believe that pre-suit communication with prospective class members, where permissible, should be forthright and complete and should indicate the disadvantages as well as the possible advantages of litigation.

We also express our disapproval that the matter of costs was not discussed in the letter. Since the association had agreed to pay them, that fact should have been noted.[7]

We conclude that the lawyer did commit a slight breach of ethics, but that, under the circumstances of this case, the lawyer's misconduct was minor and certainly should not prejudice the rights of his clients. The district judge did not consider the misconduct serious either, since he apparently did not report it to any disciplinary body as he would have been required to do by Canon 2(B) (2), ABA Canons of Judicial Ethics.

Since there was no improper solicitation, there was no violation of Rule 39 in the lawyer's filing of the affidavit. All the cases cited by defendants, where courts have dismissed suits because of lawyers' intentional disobedience of court orders, are therefore inapplicable.

## II

Because the district judge may have dismissed the suit based on a feeling that the pre-suit communication somehow disqualified plaintiffs as proper class representatives under Rule 23(a) (4),[8] we proceed to that issue.

We have found only two cases where a district court denied class status to

---

5. Substantial counsel fees may even be an acceptable incentive to encourage forceful prosecution of cases imbued with the public interest. Dolgow v. Anderson, 43 F.R. D. 472, 494–495 (E.D.N.Y.1968). The present antitrust suit falls in that category. Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 130–131, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969).

6. An interpretation of the professional-ethics code which would restrict communication among association members such as plaintiffs would run afoul of the First

Amendment. Brotherhood of Railroad Trainmen v. Virginia ex rel. Virginia State Bar, 377 U.S. 1, 84 S.Ct. 1113, 12 L.Ed.2d 89 (1964).

7. Defendants complain that the lawyer acted improperly in advancing court costs, which expense he later billed to the association. This is an accepted practice, ABA, Code of Professional Responsibility § DR5–103(B).

8. Rule 23(a) provides in part: "One or more members of a class may sue or be

plaintiffs whose attorneys were guilty of misconduct. Taub v. Glickman, 14 Fed. Rules Serv.2d 847 (S.D.N.Y.1970); Korn v. Franchard Corp., CCH Fed.Sec. L.Rep. ¶ 92,845 (S.D.N.Y.1970).[9] In both cases the misconduct was serious and there were other circumstances pointing to denial of class status. In *Taub* the attorneys waited three years after the suit was filed to request a class finding. They defaulted twice in answering calendar calls and filed "boilerplate" documents with no specific facts. And they had in another case sent out an unapproved letter along with an approved notice to class members. In *Korn* plaintiffs' counsel used defendant's list of investors to solicit information on the pending case and an unrelated case. But class status was also denied because the class was not numerous and plaintiffs' interests were not typical.

On the other hand, in Kronenberg v. Hotel Governor Clinton, Inc., 281 F. Supp. 622 (S.D.N.Y.1968), where the misconduct was serious, the court took a liberal view of Rule 23. There the plaintiffs' lawyer misrepresented facts to the judge and sent out a misleading letter with the approved notice. The court said at 281 F.Supp. 625: "It must be remembered . . . that what the court is primarily concerned with here is not the interests of the named plaintiffs and their attorneys but the interests of the members of the class." Since the other requisites of a class action were met, the court refused to revoke class status.

Only the most egregious misconduct on the part of plaintiffs' lawyer could ever arguably justify denial of class status. The ordinary remedy is disciplinary action against the lawyer and remedial notice to class members. *See* Flaksa v. Little River Marine Const. Co., 389 F.2d 885 (5th Cir.), cert. denied 392 U.S. 928, 88 S.Ct. 2287, 20 L.Ed.2d 1387 (1968).

If the district judge dismissed the complaint because the Rule 23(a) (4) requirement was not met, he erred in his assessment of the lawyer's conduct, the interests of the class members and the policy behind Rule 23. On remand the district court should consider plaintiffs' request for class status without regard to the pre-suit communication. If class designation is granted, notice to the class members can remedy whatever misleading elements there might have been in the original letter.

In any event, even in those cases where dismissal of an action as a class suit may be justified, it does not follow that the suit should be dismissed as to plaintiffs who individually have stated a cause of action. Weeks v. Bareco Oil Co., 125 F.2d 84, 95 (7th Cir. 1941).

Finally, in determining the propriety of a class action, the question is not whether the plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 have been met. Miller v. Mackey International, Inc., 452 F.2d 424 (5th Cir. 1971).

We therefore vacate the order of dismissal and remand the case for hearing and findings on the determination of the class and for trial on the merits.

---

sued as representative parties on behalf of all only if . . . (4) the representative parties will fairly and adequately protect the interests of the class."

9. The Second Circuit has held plaintiffs may appeal the order denying class-action designation, but has not yet decided the merits of the appeal. Korn v. Franchard Corp., 443 F.2d 1301 (2d Cir. 1971).