JOURNAL ENTRY AND OPINION
Defendant-appellant Mad Crab, Incorporated (appellant) appeals from the trial court's decision certifying a class action brought after an outbreak of food poisoning.
Appellant assigns the following errors for review:
 I. THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING DEFENDANT-APPELLANT'S MOTION TO DISQUALIFY COUNSEL FOR PLAINTIFF-APPELLEE.
 II. THE TRIAL COURT ABUSED ITS DISCRETION IN GRANTING PLAINTIFF-APPELLEE'S MOTION FOR A GAG ORDER.
 III. THE TRIAL COURT ABUSED ITS DISCRETION IN GRANTING PLAINTIFF-APPELLEE'S MOTION FOR CLASS CERTIFICATION.
Appellant's assignments of error lack merit. The judgment of the trial court is affirmed.
 I.
In April of 1998, Sue Farrenholz dined at the Mad Crab Restaurant in Strongsville on the day before Easter. Farrenholz went to the establishment with her husband and three other persons. All five members of the party subsequently became ill within a day of their visit to the Mad Crab. On Easter night, Farrenholz contacted another patron of the Mad Crab. Farrenholz had seen the acquaintance dining there the previous day. Farrenholz discovered that woman also experienced illness.
A few days after the incident, Farrenholz contacted a family friend who was an attorney in order to obtain his legal services in the matter. On April 17, 1998, the attorney filed a class action complaint with Farrenholz as the named plaintiff. The complaint described the class as being those people who dined at the Mad Crab the week of April 5, 1998, and became ill from food poisoning. The Mad Crab, appellant, denied the proposed class was certifiable under Civ.R. 23.
On August 28, 1998, Farrenholz filed an emergency motion asking that appellant be prohibited from communicating with putative class members about the case or any settlement offer. Farrenholz claimed that the law prohibited appellant from contacting proposed class members, contending that the case should be treated as a class action even before certification.
On September 2, 1998, appellant filed a motion to disqualify Farrenholz's attorney and a brief in opposition to the motion for a gag order. In the motion to disqualify, appellant asserted that the plaintiff's attorney improperly solicited prospective class members in violation of the Ohio Code of Professional Responsibility. In part, appellant claimed letters sent by the attorney on August 11, 1998, violated Disciplinary Rule 2-104 which prohibits a lawyer from giving unsolicited advice to a non-attorney and then accepting employment from that person. The rule also states that an attorney in a class action case can not seek employment from people contacted regarding their joinder in the suit. Appellant further stated that the letter ran afoul of Disciplinary Rule 2-101 because the letter did not state how the attorney became aware of the person's possible legal needs, disclaim any prior contact with the person, or have the words advertisement only in red, 10-point type. On September 16, 1998, the trial court granted Farrenholz's motion in part and ordered appellant to refrain from unilaterally soliciting settlement of possible claims.
On September 18, 1998, Farrenholz filed her motion for class certification. In support of the motion, Farrenholz attached the affidavit of the supervisor of the Food Protection Program of the Cuyahoga County District Board of Health. The supervisor stated that a case control study done by the Health Department because of the outbreak of food poisoning concluded that the it was likely that the origin of the contaminated food was the Mad Crab Restaurant. A copy of the study was included. The report reflected that the Health Department received a number of complaints about people experiencing gastrointestinal illness after dining at the Mad Crab Restaurant on April 10 through April 12, 1998. The Health Department interviewed one hundred sixty-four (164) people. Small round structured viruses (SRSV) were discovered in the systems of many of the people and thought to be the probable causative agent of the outbreak of food poisoning. The report stated that the virus is typically transmitted by way of the fecal-oral route. The report concluded that the contamination of the food at the restaurant was more likely than contamination occurring at the distributor level.
The trial court held a hearing on the motions on November 4, 1998. No transcript or statement of the evidence is before this court. On March 10, 1999, appellant filed a supplemental brief in opposition to the class certification motion. There is no record appellant first obtained leave of court to file the supplemental brief. Appellant stated that counsel for Farrenholz continued to communicate with potential class members. The lawyer sent a letter dated February 16, 1999, stating that the trial judge planned to certify the class and implying that any settlement entered into by the attorney would be in excess of the couple of hundred dollars allegedly offered by appellant in an effort to settle individual claims. Appellant again asserted that the attorney was in violation of the disciplinary rules.
On April 27, 1999, the trial court issued its journal entry and opinion on Farrenholz's motion for class certification and appellant's motion to disqualify counsel. In the opinion, the trial court considered each requirement necessary for class certification under Civ.R. 23 and governing case law. The trial court concluded that the proposed class did meet the requirements necessary for certification on the issue of liability. The trial court bifurcated the certification to allow for the possible development of subclasses for the purpose of the assessment of possible damages. The trial court determined that the conduct of Farrenholz's attorney in communicating with possible class members prior to certification did not require the drastic remedy of disqualification or denial of certification. The trial court determined that the communications were not solicitation because the attorney mistakenly believed he represented the class members. The trial court accepted the attorney as class counsel. The trial court also vacated its previous gag order. Appellant has appealed from this order.
 II.
Appellant's first and third assignments of error will be addressed together as similar issues of law and fact are present in both. Appellant's first assignment of error disputes the trial court's order overruling its motion to disqualify counsel. In its third assignment of error, appellant contends the trial court abused its discretion by certifying the class.
In Baughman v. State Farm Mut. Auto. Ins. Co. (2000), 88 Ohio St.3d 480, the Supreme Court of Ohio reaffirmed that the standard of review to be applied for a class action certification case is that of an abuse of discretion. A trial court possesses broad discretion in determining whether a class action may be maintained. That determination will not be disturbed absent a showing that the discretion was abused. Id. An abuse of discretion connotes more than an error of law or judgment. It implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable.Beder v. Cleveland Browns, Inc. (1998), 129 Ohio App.3d 188. The trial court's decision regarding the certification of a class should not be reversed on appeal because the appellate judges would have decided the issue differently had the initial determination been in their hands. Hamilton v. Ohio Savings Bank (1998), 82 Ohio St.3d 67.
The class action is an invention of equity. Its purpose is to facilitate adjudication of disputes involving common issues between multiple parties in a single action. Planned Parenthood Assn. ofCincinnati, Inc. v. Project Jericho (1990), 52 Ohio St.3d 56, 62. The plaintiff bears the burden of establishing the right to a class action. Shaver v. Standard Oil Co. (1990), 68 Ohio App.3d 783.
Civ.R. 23 provides in pertinent part:
 (A) Prerequisites to a class action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.
 (B) Class actions maintainable. An action may be maintained as a class action if the prerequisites of subdivision (A) are satisfied, and in addition:
* * *
 (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (a) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (d) the difficulties likely to be encountered in the management of a class action.
In Hamilton, supra, the court once more set forth the seven requirements which must be met in order for a class action to be certified. Those criteria are:
 (1) an identifiable class must exist and the definition of the class must be unambiguous;
 (2) the named representatives must be members of the class;
 (3) the class must be so numerous that joinder of all members is impracticable;
 (4) there must be questions of law or fact common to the class;
 (5) the claims or defenses of the representative parties must be typical of the claims or defenses of the class;
 (6) the representative parties must fairly and adequately protect the interests of the class;
 (7) one of the three Civ.R. 23(B) requirements must be met.
Id. at 71.
Appellant raises no arguments regarding the second, third, or fourth requirements set forth in Hamilton. Therefore, the adequacy of those factors will not be addressed.
 Identifiable Class
An identifiable class must exist in order for certification to take place. The definition of the class must be unambiguous.Warner v. Waste Management, Inc. (1988), 36 Ohio St.3d 91, paragraph two of the syllabus. The description of the class must be precise enough to permit the trial court to determine whether a particular individual is a member of the class. Hamilton, supra.
The description of the class at issue here is defined as all persons who dined at appellant's restaurant during the period of April 11 to April 13, 1998, and became ill from food poisoning as a result, excluding appellant's employees. Appellant argues that this definition is imprecise because many questions would need to be answered to determine if a person is, indeed, a member of the class. Mainly, appellant focuses on the difficulty Farrenholz may have in identifying and contacting all of the members of the class. Frankly, this is not a consideration when determining if an identifiable class exists. The class is restricted to those people who dined at the Mad Crab Restaurant over a three-day period and who suffered from food poisoning as a result. This definition is precise enough for the trial court to determine whether a purported class member belongs in the class or not.
 Typicality
The named representative's claims or defenses must be typical of those of the class. The purpose of this requirement is to protect the interests of absent class members. Marks v. C.P.Chemical Co. (1987), 31 Ohio St.3d 200. There must be no express conflict between the representative and the class. Warner, supra,
at paragraph four of the syllabus. Typicality does not require an exact identity of claims. A claim will be deemed typical, interalia, if it arises from the same event that gave rise to the claims of other class members. Baughman, supra. Varying amounts of damages among the class or the need for an individual determination of damages does not preclude class certification. DeSario v.Industrial Excess Landfill, Inc. (1991), 68 Ohio App.3d 117.
Appellant asserts that there is no evidence that Farrenholz's claim is typical of that of other class members. The class herein is defined as those patrons of the Mad Crab Restaurant who dined at the establishment during April 11 to April 13, 1998, and subsequently became ill from food poisoning. There is evidence Farrenholz ate at the Mad Crab during this time period and suffered from food poisoning as a result. There is no express conflict between Farrenholz's claim and those of other class members. Rather, her claim and those of other proposed class members are the same.
 Adequate Representation
Here, appellant contends that Farrenholz is not representative of the class because her interest is antagonistic to that of the other class members. Appellant asserts that the manner in which Farrenholz's attorney contacted purported class members was improper and should have resulted in his disqualification. Appellant argues that, because the representative plaintiff's attorney acted unethically, Farrenholz will not adequately represent the rest of the class.
Adequacy of representation encompasses two parts. The first concerns the adequacy of the representative and the second part focuses on the adequacy of counsel. Planned Parenthood, supra. A representative is deemed adequate if his or her interest is not antagonistic to the interests of the other class members. Warner,supra. Although plaintiff argues that Farrenholz's interest is antagonistic to that of other class members, that argument actually centers on the actions of her attorney.
Generally, courts reviewing the requirement regarding the adequacy of counsel look at the attorney's qualifications such as experience in handling the litigation. Here, the heart of appellant's appeal is that Farrenholz's attorney committed ethical breaches which should have led to his disqualification and the denial of certification. Appellant points to the short period of time between when Farrenholz dined at the Mad Crab and the filing of the class action lawsuit as an indication that the attorney's intentions were primarily to secure a large fee for himself. However, the record reflects that Farrenholz and the attorney were acquaintances of long-standing. Farrenholz contacted the attorney after not only she became ill but five other Mad Crab patrons as well. The short period of time between the occurrence and filing of the complaint is hardly determinative of ill-intent on the part of the attorney, especially since he was aware of six people who were affected at the time.
Appellant primarily relies on a letter sent to restaurant patrons and employees in which the attorney stated that the Mad Crab could not contact the person in an effort to settle any claim. Appellant also disputes the claim of Farrenholz's attorney in a letter sent to prospective class members. In the letter, the lawyer wrote that he was the class counsel and that the person did not need to secure private counsel to pursue a claim against the Mad Crab. Appellant states that this letter improperly solicited clients. The attorney sent another letter in which it is implied that the claims against the Mad Crab would be in excess of the couple of hundred dollars supposedly offered to individuals by the restaurant. The attorney again stated that he represented the class members.
Appellant asserts that these letters violated Disciplinary Rule 2-104 which forbids an attorney from giving unsolicited advice to a non-lawyer, that the person should obtain the services of an attorney or, if such advice is given, to accept any employment as a result of that advice. Further, an attorney in a class action is not to seek employment from people whom the attorney has contacted. Appellant contends the attorney also violated Disciplinary Rule 2-101 which permits an attorney to engage in written solicitation by direct mail if the letter discloses how the lawyer discovered the person's name and legal need, disclaims any prior acquaintance or contact with the person, and includes the words advertisement only in red 10-point type. Appellant argues that the attorney in question can represent Farrenholz but is barred from being counsel for anyone to whom he sent a solicitation letter.
In its journal entry, the trial court noted that courts rarely deny class certification because of any alleged unethical conduct by the class counsel. Rather, courts tend to employ corrective measures such as substitution of counsel or remedial notice. The trial court went on to consider the points raised by appellant about possible violations of Disciplinary Rules 2-101 and 2-104.
The trial court has the inherent authority to supervise the attorneys who appear before it, including the power to disqualify counsel in specific cases. Hollis v. Hollis (1997), 124 Ohio App.3d 481. Courts have observed that disqualification is a drastic measure which only should be utilized if absolutely necessary. See Waliszewski v. Caravona Builders, Inc. (1998),127 Ohio App.3d 429. The trial court enjoys wide discretion in considering a motion to disqualify counsel and will not be reversed absent an abuse of that discretion. Phillips v. Haidet (1997),119 Ohio App.3d 322. The moving party bears the burden of demonstrating the need to disqualify counsel. Hollis, supra. That burden requires more than a mere allegation of an ethical violation but must be supported by the record. Id. The moving party must demonstrate that disqualification is necessary because the attorney's conduct poses a significant risk of tainting the trial.Creggin Group, Ltd. v. Crown Diversified Industries Corp (1996),113 Ohio App.3d 853.
In its journal entry, the trial court noted that class certification may be denied due to unethical conduct on the part of the proposed class counsel but that this result is not automatic. In its opinion, the trial court cited to Halverson v. ConvenientFood Mart, Inc. (7th Cir. 1972), 458 F.2d 927. In that case, the court found that pre-suit communication with potential class members should not result in the denial of the certification of a class if the breach in ethics was slight. Even misconduct which is prejudicial to the class should not lead to decertification if another counsel may be substituted and remedial notice sent to potential class members. In the instant case, the trial court reviewed the letter sent by Farrenholz's attorney on August 11, 1998, and concluded the letter did not violate Disciplinary Rules 2-101(F)(2) and 2-104(A)(5). The trial court found the letter went beyond solicitation because the attorney stated he was the attorney for the potential class member. Therefore, the trial court stated the letter contained inaccurate and misleading statements of the law. Even so, the trial court determined that the ethical conduct on the part of the attorney did not warrant disqualification.
The trial court recognized that language in Hamilton, supra,
could give the impression to plaintiff's counsel that the defendant was precluded from communicating with any potential class members from the time the class action suit was filed. The trial court pointed out that in Hamilton the purported class members and the defendant had an on-going business relationship and the defendant had sent essentially misleading letters to the potential class members in an effort to settle their claims. Therefore, the potential for coercion was great under the facts of that case. The instant case is distinguishable. The purported class members do not have an on-going relationship with the defendant. Further, the plaintiff's attorney does not represent the class until the trial court enters an order to that effect.
The trial court found that disqualification of Farrenholz's attorney was not warranted because the attorney's actions were based upon a misinterpretation of Hamilton and did not stem from an improper motive. The second letter sent by the attorney to potential class members also appears to be based on the lawyer's assumption that he represented the class members. The trial court determined that the attorney's behavior stemmed from his misinterpretation of Hamilton and not from a desire for personal gain. The trial court's ruling denying appellant's motion for disqualification did not constitute an abuse of discretion. Further, the trial court may reconsider certification or the disqualification of the attorney as the case proceeds.
 Civ.R. 23(B)(3)
Farrenholz brought this class action suit under Civ.R. 23(B)(3). This is the vehicle for the maintenance of a class action when damages are sought. Two findings must be made under this section. First, the court must find that common questions predominate over questions affecting only individual members. Second, a class action must be superior to other available methods for a fair and efficient adjudication of the controversy. Warner,supra. In Cope v. Metro. Life Ins. Co. (1998), 82 Ohio St.3d 426,429-430, the Supreme Court of Ohio explained:
 It is now well established that a claim will meet the predominance requirement when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position. Lockwood Motors, Inc. v. Gen. Motors Corp. (D.Minn. 1995), 162 F.R.D. 569, 580.
If predominance exists, then the economies present in a class action suit can be achieved. Id. at 430. The trial court need only engage in a brief analysis of the claims to be litigated and the proof required at trial when resolving the predominance question. Shaver, supra, at 798. [C]ommon questions of law and fact must represent a significant aspect of the class and be capable of resolution for all members of the class in a single adjudication. Id.
A mass tort involving a single catastrophic event is amenable to class certification because similar types of physical harm or property damage is caused. See Valentino v. Carter-Wallace, Inc.
(9th Cir. 1996), 97 F.3d 1227. Also, proximate cause can be determined on a class-wide basis because it is the same for each of the plaintiffs. Georgine v. Amchem Products, Inc. (3rd Cir. 1996),83 F.3d 610. A class action may be the best vehicle to resolve a defendant's liability when the alleged cause is a single course of conduct. See Lowe v. Sun Refining Marketing Co. (1992),73 Ohio App.3d 563.
In the instant case, the gravamen of the claims against appellant revolve around whether the food consumed by patrons of the Mad Crab from April 11 to April 13, 1998, caused food poisoning. Farrenholz supported her claim with a report from the Heath Department tracing the outbreak to a certain virus transmitted to people dining at the Mad Crab on the days in question. The common question to be resolved for each of the proposed claimants would be proximate cause. In the absence of a class action case, each would have to prove that the cause of their illness was food poisoning traceable to the Mad Crab. The common question here is causation, which has to be proved on a class-wide basis. Whether damages may differ among the claimants is not a reason to deny class certification. Hamilton, supra. Therefore, the element of predominance under Civ.R. 23(B)(3) has been met in the instant case.
Appellant also argues that no Ohio court has ever certified a class in a food-poisoning case. That this case is one of first impression hardly is a reason to deny certification. Such a stance says little about appellant's confidence in the judicial system to dispense justice. As long as the requirements necessary for certification are present, the fact that no food poisoning case has gone forward in Ohio is inapposite. Farrenholz points out that other jurisdictions have certified cases involving food poisoning. See Brown v. New Orleans Pub. Serv., Inc. (La.App. 1987),506 So.2d 621; McFadden v. Staley (Fl.App.Ct. 1997), 687 So.2d 357;Bentkowski v. Marfuerza Compania Maritima S.A. (D.C. Pa. 1976),70 F.R.D. 401; Hernandez v. The Motor Vessel Skyward (D.C. Fla 1973),61 F.R.D. 558.
Although common questions predominate, the class actions still must be the superior method to settle the controversy. Factors to consider include damages, the representative's financial ability to pursue a separate suit, and judicial economy and fairness. Shaver,supra. A comparative evaluation of other available procedures is required to determine whether the judicial time and energy involved would be justified.
Appellant points out that it was engaged in settling claims of patrons who claimed to have suffered from food poisoning. Appellant argues that there was no reason to halt the settlement process because the class action suit was filed.
There is some indication in the file that appellant might have been settling the claims for much less than what they were worth. Also, appellant has little, if any, interest in seeking out any patron who may have suffered from the food-inflicted virus while it would be in the plaintiff's interest to discover other class members. Appellant states that the class would be nationwide and that the due process rights of all of the affected patrons would be compromised. Appellant argues Farrenholz could not discover all of the people who dined at the Mad Crab, especially those who paid for their dinners with cash. However, as stated above, it is in Farrenholz's interest to discover as many class members as possible. Notification by way of publication would be sufficient to satisfy any due process concerns.
For the most part, the over one hundred potential claims involved in the instant case would be small. Unlike directly settling with appellant, the interest of the class representative would be to maximize the number of claimants and resolve the issue of causation. Therefore, at this point in the litigation, a class action is the best utilization of judicial resources.
Appellant's first and third assignments of error are overruled.
 III.
Appellant's second assignment of error addresses the propriety of the trial court's act of granting Farrenholz's motion for a gag order. The trial court subsequently vacated the disputed order. This court will decide only actual controversies and not render opinions upon moot questions or abstract propositions. Miner v.Witt (1910), 82 Ohio St. 237, syllabus; Tschantz v. Ferguson
(1991), 57 Ohio St.3d 131, 133; Ottawa Cty. Bd. of Commrs. v.Seckler (1997), 122 Ohio App.3d 617. Because the gag order of which appellant complains was vacated by the trial court, the question before this court is moot and will be disregarded.
Appellant's second assignment of error lacks merit.
It is ordered that appellees recover of appellants their costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.