Henry ENDO and John Lesch, Plaintiffs,

v.

John M. ALBERTINE, et al., Defendants.

No. 88 C 1815.

United States District Court,
N.D. Illinois, E.D.

Feb. 26, 1993.

Dennis A. Bell, Paul Felton Harvey, Bell & McGurk, Ltd., Terry Rose Saunders, Arthur T. Susman, P. Terrence Buehler, Susman, Saunders & Buehler, Charles J. Schneider, Daluga & Schneider, Ltd., Chicago, IL, for plaintiffs.

Donald E. Egan, Cook, Egan, McFarron & Manzo, Ltd., Bonita L. Stone, Lee Ann Watson, Katten, Muchin & Zavis, James Andrew Klenk, Bernard J. Nussbaum, Sonnenschein, Nath & Rosenthal, Chicago, IL, Joel M. Leifer, New York City, Robert D. McLean, John M. George, Christopher W. Frost, Jeffrey R. Tone, Sidley & Austin, Jerold Sherwin Solovy, Joel J. Africk, Jenner & Block, Gail A.

Niemann, City of Chicago, Law Dept., Corp. Counsel, Chicago, IL, Patricia A. McGovern, Carl D. Liggio, Arthur Young & Co., New York City, for defendants.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Plaintiffs Henry T. Endo ("Endo") and John Lesch ("Lesch") brought this suit alleging violations of federal securities laws as well as various related state laws. They presently seek class certification of a plaintiff class of securities purchasers and of a defendant class of underwriters pursuant to FED. R.CIV.P. 23.

### I. Background

Plaintiffs' claims arise out of a Registration Statement and Prospectuses issued on March 3, 1987 by Fruit of the Loom, Inc. ("Fruit of the Loom"). On that same date, Fruit of the Loom made a public offering of securities consisting of 31,050,000 shares, including over-allotment options at $9.00 per share, of Class A Common Stock, $60 million principal amount of 6¾% convertible subordinated debentures due in the year 2002, and $280 million principal amount, including over-allotment options, of 10¾% senior subordinated notes due in 1985. Named plaintiffs Endo and Lesch bought 1,700 shares of Class A Common Stock on March 3, 1987.

In all, plaintiffs originally alleged nine counts against defendants Fruit of the Loom, various directors and officers of Fruit of the Loom (collectively "Officer and Director defendants") accounting firms Arthur Andersen & Co. ("AA & Co.") and Arthur Young & Co. ("AY & Co.") and investment banking firms (collectively "investment banker defendants") Drexel Burnham Lambert, Inc. ("Drexel Burnham"), Merrill Lynch Capital Markets ("Merrill Lynch"), E.F. Hutton & Co., Inc. ("E.F. Hutton"), Shearson Lehman Hutton, Inc. ("Shearson"), and Dean Witter Reynolds, Inc. ("Dean Witter"). In a Memorandum Opinion and Order dated January 29, 1993, this court granted in part the defendants' motions to dismiss and dismissed Counts Six through Nine, and ordered stricken paragraphs 34(c), (d), (e), (f) and 35(a) and

(b) of plaintiffs' Complaint for failure to state a claim upon which relief could be granted.

In the five claims remaining in their Complaint, plaintiffs allege that all of the defendants violated § 10(b) of the Securities Exchange Act of 1934 (the "1934 Act"), 15 U.S.C. § 78(b), and Rule 10b–5 promulgated thereunder (Count I), § 11 of the Securities Act of 1933 (the "1933 Act"), 15 U.S.C. § 77k (Count II), committed common law fraud (Count IV), and violated the Illinois Consumer Fraud and Deceptive Business Practices Act (the "Illinois Consumer Fraud Act"), ILL. REV.STAT. ch. 121½, § 262 (Count V). Plaintiffs also allege, in their remaining claim, that all the investment banker defendants and Leon Black, as the control person or agent of Drexel Burnham, violated § 12(2) of the 1933 Act, 15 U.S.C. § 77*l* (2) (Count III).

Plaintiffs now move to certify a plaintiff class and a defendant class. Plaintiffs seek to certify the following plaintiff class pursuant to FED.R.CIV.P. 23(a) and (b)(3):

> All persons and entities who purchased or otherwise acquired the Class A common stock, 6¾% convertible debentures or 10¾% notes of Fruit of the Loom during the period from March 3, 1987 to and including March 1, 1988 pursuant to the 1987 public offering or at any time, during this period in the open market, but excluding defendants, members of their family, their heirs, successors and assigns, the officers, directors and affiliates and subsidiaries of any corporate defendant.

Motion for Certification of Plaintiff Class and Defendant Class, at p. 1. Furthermore, plaintiffs seek to certify the following defendant class pursuant to FED.R.CIV.P. 23(a) and (b)(3):

> All of the 106 underwriters of the 1987 public offering of Fruit of the Loom Class A stock.

Motion for Certification of Plaintiff Class and Defendant Class, at p. 1. The defendants object to certification of each of these putative classes. Each will be addressed accordingly.

## II. *Discussion*

To certify a class pursuant to FED.R.CIV.P. 23(a) plaintiffs must show that "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." FED.R.CIV.P. 23(a); *see also Trotter v. Klincar,* 748 F.2d 1177, 1184 (7th Cir. 1984). Equally important, plaintiffs must show that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." FED.R.CIV.P. 23(b)(3). Each requirement will be discussed accordingly for each putative class.

### A. Plaintiff Class

■ As to this putative class, plaintiffs argue that all four prerequisites of Rule 23(a) are met as well as the requirements of Rule 23(b)(3). Defendants counter that "[p]laintiffs' proposed class representation ... is riddled with fatal defects" and challenge certain requirements of Rule 23, each of which will be addressed below. Defendants' Consolidated Opposition to Motion for Plaintiff Class Certification ("Consolidated Opp."), at p. 1.

#### 1. *Numerosity*

Plaintiffs claim that over one thousand persons purchased or otherwise acquired securities of Fruit of the Loom during the appropriate time period and, thus, this satisfies the numerosity requirement. We agree and defendants do not challenge this assertion. Therefore, the numerosity requirement of Rule 23(a)(1) is met here.

#### 2. *Commonality*

In regard to this prong of Rule 23(a), plaintiffs claim that the questions of law or fact common to the class include:

> i) whether defendants pursued or participated in the common scheme, plan and course of conduct complained of herein;
>
> ii) whether various documents and statements, including a Registration State-

ment and Prospectus issued by defendants and disseminated to the investing public, contained misrepresentations or omissions of material facts about Fruit of the Loom's liabilities, contingent liabilities, its business, financial condition or future business prospects;

iii) whether defendants violated Section 11 of the 1933 Act, Section 12(2) of the 1933 Act or Section 10(b) of the 1934 Act or Rule 10b–5 promulgated thereunder;

iv) whether defendants violated common law duties owed to plaintiffs and the members of the Plaintiff Class;

v) whether defendants acted with scienter, that is knowingly or recklessly, or negligently in misrepresenting or failing to disclose material facts or in aiding and abetting such conduct;

vi) whether defendants' misconduct caused the market price of Fruit of the Loom securities to be artificially inflated at the time of the 1987 public offering and subsequent thereto;

vii) whether plaintiffs and the members of the Plaintiff Class have sustained damages and, if so, the proper measure of damages.

Plaintiffs' Memo. in Support of Certification, at pp. 10–11. Again, the defendants do not attack this contention. Furthermore, the court agrees that these questions of law or fact common to the class meet the requirements of Rule 23(a)(2).

3. *Typicality*

 Endo's and Lesch's claims are typical under Rule 23(a)(3) if they arise "from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Rosario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir.1992) (quoting *De La Fuente v. Stokely–Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir.1983)). But typical does not mean identical. Rather, the court must "look to the defendant's conduct and the plaintiff's legal theory to satisfy Rule 23(a)(3)." *Rosario,* 963 F.2d at 1018. Furthermore, the typicality requirement is liberally construed. *Hochschuler v. G.D. Searle & Co.,* 82 F.R.D. 339, 344 (N.D.Ill. 1978).

The defendants challenge typicality from various fronts. They first argue that the claims of Messrs. Endo and Lesch are not typical of the class because Endo and Lesch bought only Class A common stock while they seek to represent a class of purchasers of debentures and notes as well as common stock. They state that the interests of stockholders and debtholders may be adverse and, thus, these parties should not form part of the same class. In support, the defendants cite *Simon v. Westinghouse Electric Corp.,* 73 F.R.D. 480 (E.D.Pa.1977); *Model Associates, Inc. v. U.S. Steel Corp.,* 88 F.R.D. 338, 339–41 (S.D.Ohio 1980); *Cohen v. Uniroyal, Inc.,* 77 F.R.D. 685, 693 (E.D.Pa.1977); *Herbst v. Able,* 278 F.Supp. 664, 668 n. 6 (S.D.N.Y.1967); and *Evans v. City of Chicago,* 689 F.2d 1286, 1292 (1982), *vacated,* 873 F.2d 1007 (7th Cir.1989). These courts refused to certify a class composed of stock and debenture holders where the class representative was not a purchaser of both stock and debentures.

In rebuttal, plaintiffs argue that these cases stand for stated proposition, but that the better-reasoned cases hold that a class composed of stock and debenture purchasers can be represented by a purchaser of only one type of security. In support, plaintiffs cite *Epstein v. Moore,* Fed.Sec.L.Rep. (CCH) ¶ 93,957, at 90,443, 1988 WL 62213 (D.N.J. 1988); *In re Saxon Sec. Litig.,* Fed.Sec. L.Rep. (CCH) ¶ 99,691, at 99,779, 1984 WL 2399 (S.D.N.Y.1984); and *Handwerger v. Ginsberg,* Fed.Sec.L.Rep. (CCH) ¶ 94,934, at 97,240, 1975 WL 343 (S.D.N.Y.1975). These cases have held that a class of plaintiffs who purchased different types of securities may properly be certified with a representative party who only purchased one type of security.

The court is persuaded, at this point, by the plaintiffs. Plaintiffs' claims arise from the defendants' participation in the issuance of Prospectuses containing false or misleading statements or omitting material facts. These claims are equally applicable to stock and debenture holders. The facts and legal theories asserted by the class to prove any violations will be identical regardless of the type of security at issue. *Blackie v. Barrack,*

524 F.2d 891, 911 n. 27 (9th Cir.1975). The only difference between the claims for the different types of securities is that any violation may have affected the value of each differently. *Handwerger v. Ginsberg,* Fed. Sec.L.Rep. (CCH) ¶ 94,934, 1975 WL 343 (S.D.N.Y.1975); *Clark v. Cameron–Brown Co.,* 72 F.R.D. 48, 53 (M.D.N.C.1976); *Epstein v. Moore,* Fed.Sec.L.Rep. (CCH) ¶ 93,-957, at 90,443, 1988 WL 62213 (D.N.J.1988). This difference does not make the claims of the purchasers of each type of security atypical of the others. The defendants point to no claim under which the positions of the holders of the different types of securities would be adverse. There is no question here that the claims of both the named plaintiffs and the debenture holders arose "from the same event or practice or course of conduct that [gave] rise to the claims of other class members and [their] claims are based on the same legal theory". *See Rosario,* 963 F.2d at 1018. Therefore, we find that plaintiffs have shown that the class claims are typical under Rule 23(a)(3). We specifically reserve the right, however, pursuant to Rule 23(c)(1), to alter or amend the definition of the class as circumstances may warrant to determine damages of the different securities.

■ Defendants further argue that the representatives' claims are not typical because each is subject to unique defenses. The defendants assert that Lesch is subject to the unique defense that, because he worked for Northwest Industries until January 2, 1986 in a high level financial management position, he had access to corporate documents and should have known of any alleged omissions or misstatements. Furthermore, defendants argue that both Endo and Lesch are subject to the unique defense that they relied on information other than that in the Prospectuses or the integrity of the market. Specifically, defendants argue that Endo and Lesch relied on the advice of their respective brokers in making their stock purchases.

Plaintiffs attempt to defuse the defendants' first argument by stating that reliance is presumed for federal securities law claims and, thus, Lesch's access to inside information is irrelevant. We do not agree that this renders the unique defense against Lesch irrelevant. According to the Seventh Circuit, "[t]he fear [of unique defenses] is that the named plaintiff will become distracted by the presence of a possible defense applicable only to him so that the representation of the rest of the class will suffer." *J.H. Cohn & Co. v. American Appraisal Assocs., Inc.,* 628 F.2d 994, 999 (7th Cir.1980). We believe that this fear is present because Lesch is subject to a unique defense. Lesch's deposition testimony showed that in his position during 1985 and 1986, he "had access to all the financial and operational data of the corporate office and the operating companies ... includ[ing] Union Underwear [predecessor to Fruit of the Loom]". Lesch Dep., at pp. 470–71. He also testified that he attended meetings with fellow employees in which they discussed Velsicol's environmental liabilities and their magnitude. Lesch Dep., at pp. 65–67, 534–41. The issue of Velsicol's environmental liabilities is a major claim in plaintiffs' Complaint. *See Endo v. Albertine,* 812 F.Supp. 1479, 1486–88 (N.D.Ill. Jan. 29, 1993) (holding that the issue of Velsicol's retained environmental liabilities withstands a motion to dismiss, while rejecting other claims). Furthermore, to the extent actual reliance need be shown in regard to the state law claims, Lesch is subject to a unique defense of lack of reliance. These unique defenses render Lesch's claims atypical of those of the class members and makes Lesch an improper representative. As such, the class cannot be certified with Lesch as a representative party. *See Koos v. First Nat'l Bank,* 496 F.2d 1162, 1164–65 (7th Cir.1974); *Landry v. Price Waterhouse Chartered Accountants,* 123 F.R.D. 474, 476 (S.D.N.Y.1989); *Epstein v. American Reserve Corp.,* 1988 WL 40500, at *4–*5, 1988 U.S.Dist. LEXIS 3382, at *12–*14 (N.D.Ill.1988). Therefore, all further discussion of certification of the plaintiff class will involve only Endo as the putative class representative.

■ As to Endo, reliance on the advice of his broker does not subject him to a unique defense to defeat typicality. In a case such as this one, based on a fraud-on-the-market theory, reliance by a representative party on his or her broker's advice has consistently been held to not defeat typicality. *See In re*

*Bally Mfg. Sec. Corp. Litig.,* 141 F.R.D. 262, 268–69 (N.D.Ill.1992); *Antonson v. Robertson,* 141 F.R.D. 501, 507–08 (D.Kan.1991); *In re VMS Sec. Litig.,* 136 F.R.D. 466, 476 (N.D.Ill.1991); *In re MDC Holdings Sec. Litig.,* 754 F.Supp. 785, 802 (S.D.Cal.1990); *Tolan v. Computervision Corp.,* 696 F.Supp. 771, 778 (D.Mass.1988); *In re Western Union Sec. Litig.,* 120 F.R.D. 629, 634 (D.N.J. 1988). Therefore, Endo's claims are typical of those of the plaintiff class.

### 4. Adequacy of Representation

█ This provision of Rule 23(a) requires that the representative party fairly and adequately represent and protect the interests of the class. FED.R.CIV.P. 23(a)(4); *Rosario,* 963 F.2d at 1018. This prong is composed of two factors. First, the class representative must not have interests antagonistic to those of the class. Second, the plaintiff must vigorously pursue the litigation on behalf of the class and his chosen attorney must be qualified, experienced and able to conduct the litigation. *Secretary of Labor v. Fitzsimmons,* 805 F.2d 682, 697 (7th Cir.1986); *Fry v. UAL Corp.,* 136 F.R.D. 626, 634 (N.D.Ill. 1991). The defendants do not quarrel with plaintiffs' counsel's abilities or argue that the representative plaintiff has interests antagonistic to those of the class or will not pursue the litigation vigorously. Furthermore, plaintiffs have persuaded the court that Endo will provide adequate representation. Therefore, Rule 23(a)(4) is satisfied here.

### 5. Predominance of Common Questions

According to Rule 23(b)(3), questions of law or fact common to the class must predominate over any questions affecting only individual members. FED.R.CIV.P. 23(b)(3). The defendants here argue that plaintiffs' state law claims of common law fraud (Count IV) and violation of the Illinois Consumer Fraud Act (Count V) do not meet this criteria because individual issues of reliance predominate over the common questions. We disagree. As stated in *Barkman v. Wabash, Inc.,* 674 F.Supp. 623, 635 (N.D.Ill.1987):

the fraud alleged in this case is based on conduct of defendants which was uniform as to all class members. No individual representations were made, nor were there any separate communications between defendants and individual class members. [citations omitted] All class members were faced with the same allegedly fraudulent statements and instances of non-disclosure in determining whether or not to accept the tender offer. Thus, essentially the same proof that will be introduced in the federal securities law claims will be relevant to the state law claims and issues of personal reliance may be reserved for a determination of damages....

*see also Helfand v. Cenco, Inc.,* 80 F.R.D. 1, 8 (N.D.Ill.1977); *In re United Energy Corp. Solar Power Modules Tax Shelter Invests. Sec. Litig.,* 122 F.R.D. 251, 254 (C.D.Cal. 1988). Therefore, we hold that the plaintiff class has established this prong of Rule 23(b)(3). We reserve the right, however, to modify the class pursuant to Rule 23(c)(1) as future circumstances may warrant.

█ Our discussion of this requirement does not end there, however. Defendants further argue that individual questions predominate because the court will have to apply the law of all fifty states to the state claims of the many members of the plaintiff class. We disagree. Under *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 821–23, 105 S.Ct. 2965, 2979–80, 86 L.Ed.2d 628 (1985), Illinois substantive law may apply to all the state law claims. In any case we will not decide the choice of law issue now. We believe that questions common to the class nevertheless predominate. The evidence used to prove the state law fraud claims will be the same as that used to prove the federal claims. No statements were made by the defendants to individual plaintiffs. The alleged misstatements and omissions were common to all the plaintiffs. Furthermore, "[t]he recent trend in securities fraud cases is to certify related pendent claims, allowing for reconsideration upon a later determination that the applicable state laws are so diverse that class certification is inappropriate." *In re VMS Sec. Litig.,* 136 F.R.D. 466, 480 (N.D.Ill.1991). Therefore, plaintiffs' federal and state law claims meet the requirements of Rule 23(b)(3).

### 6. *Superiority of Class Action Method*

According to Rule 23(b)(3), before a class can be certified the court must further find that a "class action is superior to other available methods for the fair and efficient adjudication of the controversy." FED.R.CIV.P. 23(b)(3). The defendants do not argue that a class action is not the superior method of adjudicating this controversy. Furthermore, according to the Complaint the plaintiff class will consist of over 1,000 persons each of whom was allegedly defrauded by the same Registration Statement and Prospectuses produced by the same group of over 100 defendants. Thus, the class action device is the superior method of adjudicating this controversy.

### 7. *Miscellaneous Arguments*

■ Finally, defendants argue that the plaintiff class should not be certified because Endo and Lesch are inadequate representatives because they were improperly solicited to bring this case. Defendants argue that Anthony Kolton ("Kolton"), an attorney, improperly solicited both Endo and Lesch, that he instigated this lawsuit and that he controls it. Plaintiffs deny these allegations, saying Kolton and Lesch are friends, that solicitation of friends is proper (if what Kolton did is determined to be solicitation), that reliance on an attorney for guidance in a class action is proper and necessary, and that defendants cannot seriously argue that Kolton controls this litigation when three law firms have been retained to represent the class. Both parties cite *Halverson v. Convenient Food Mart, Inc.*, 458 F.2d 927, 931 (7th Cir.1972) for support. *Halverson*, therefore, is a good starting point.

In *Halverson*, the attorney for the franchisee class solicited class members whom he had previously represented in a contract dispute with their franchisor. In the subsequent action, he improperly solicited the same class members to represent them against their franchisor in a totally unrelated antitrust suit. Based on this solicitation, the district court dismissed the entire suit. The Seventh Circuit reversed the dismissal and remanded. Even though "the lawyer did commit a slight breach of ethics", the Sev-

enth Circuit stated, "[o]nly the most egregious misconduct on the part of plaintiffs' lawyer could ever arguably justify denial of class status." *Halverson*, 458 F.2d at 931–32. A similar situation is present here.

First of all, even if Kolton committed a breach of ethics by approaching Lesch about this lawsuit, defendants concede that he has not been paid for anything he has done so far in this case nor does he currently represent the class. As such, we will not prejudice the members of the class because a friend of Lesch's, who is an attorney, approached him about a possible lawsuit against these defendants. The applicable canon of ethics in effect at the time of that solicitation states that a lawyer may solicit a "close friend". ILL.REV.STAT. CH. 110A, Canon 2, Rule 2–103(b)(1) (1985) (subsequently repealed and replaced by Illinois Rule of Professional Conduct 7.3). We will not determine here, on the record of a Motion for Class Certification, whether or not Kolton and Lesch were sufficiently "close". This, in any case, is not sufficiently egregious to justify denial of class status.

■ Similarly, the solicitation of Endo may have been improper, but does not rise to the level of impropriety sufficient to warrant denying class status. Defendants make no allegation here that Endo is not an adequate class representative. Instead, the defendants try to impeach him through conduct of Kolton. But Kolton's conduct may or may not be improper. The applicable canon of ethics relevant here only prohibits solicitation that is for "pecuniary gain or other benefit". ILL.REV.STAT. CH. 110A, Canon 2, Rule 2–103(a) (1985) (subsequently repealed and replaced by Illinois Rule of Professional Conduct 7.3). The defendants allege only, regarding Kolton's motive for financial gain, that it was Endo's belief that Kolton would somehow get paid from proceeds of a successful suit. Endo apparently never agreed to pay Kolton anything. *See* Endo Dep., at pp. 313–15. As such, it cannot affirmatively be stated here that Kolton solicited Endo for pecuniary gain or other benefit. In any case, while we do not in any way condone Kolton's conduct, there are other procedures in place to thwart such conduct other than denying

class status to claimants who have alleged actionable claims. Illinois Rule of Professional Conduct 8.3(a) *requires* attorneys to report professional misconduct to the appropriate authorities. The disciplinary power of these authorities should be exercised to discourage and punish any professional misconduct. Class status will not be denied for any alleged impropriety by Kolton.

### Conclusion as to Plaintiff Class

For the foregoing reasons, the plaintiff class is certified as defined by plaintiffs with Henry T. Endo as class representative. John Lesch is disqualified as class representative. We must now determine the propriety of the putative defendant class under FED.R.CIV.P. 23(b).

### B. Defendant Class

■ Pursuant to FED.R.CIV.P. 23(b), the same requirements must be met to certify a defendant class as to certify a plaintiff class as set forth above. As to this putative class, the defendants do not argue that the four requirements of Rule 23(a) are not met. Instead, they challenge each prong of Rule 23(b)(3) and raise a due process argument in opposition to certification of the class. The court finds on its own, independent review that each element of Rule 23(a) is met. Therefore, we need only discuss the requirements of Rule 23(b)(3) and the other arguments made by the defendants.

#### 1. Common Issues of Law or Fact

Pursuant to Rule 23(b)(3), before the court can certify a class it must find "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members ...". FED.R.CIV.P. 23(b)(3). The defendants argue that the individual issues of (1) the level of due diligence of each underwriter, and (2) the scienter of each underwriter predominate over any questions common to the class. Underwriter Defendant's Opposition to Plaintiff's Motion for Defendant Class Certification, at pp. 4–6. The plaintiffs respond by arguing that, while individual due diligence concerns may arise, they do not predominate over common issues of materiality,

knowledge of plaintiffs, and due diligence issues common to the lead underwriters. Plaintiffs' Reply Memo., at pp. 10–12. We agree with the plaintiffs.

We do not believe that these issues predominate over the common issues, at least at this stage of the litigation. At this point, the members of the putative defendant class have similar interests. Each has the same interest in proving any misrepresentations immaterial, that the plaintiffs acted with knowledge of any material misrepresentations, and the due diligence of the lead underwriters, each of which would tend to exonerate the defendant class. *See In re Gap Stores Sec. Litig.,* 79 F.R.D. 283, 302 (N.D.Cal.1978); *see also McFarland v. Memorex Corp.,* 96 F.R.D. 357, 363 (N.D.Cal. 1982); *In re Computer Memories Sec. Litig.,* 111 F.R.D. 675, 684–85 and 688–89 (N.D.Cal. 1986). As such, if any of these things is shown, no inquiry will be made into the due diligence or scienter of the sub-underwriters. Therefore, at this point at least, questions common to the class predominate.

#### 2. Superior Method of Adjudication

As to this requirement, defendants argue that a class action is not the superior method of adjudication because each defendant will choose to opt out of the class, thus destroying the class. Underwriter Def.Opp. Memo., at pp. 7–8 (citing numerous cases in support). Plaintiffs respond that in no case cited by the defendants did the court hold that the mere possibility of a mass opt-out defeated class certification. Plaintiff's Reply Memo., at pp. 12–13. Furthermore, plaintiffs argue, there are strong incentives in this case for the defendant class members to remain members. We agree and will certify the defendant class at this point, but reserve the right, pursuant to Rule 23(c)(1) to modify the class as circumstances may warrant.

While we recognize that the putative class members may opt out and destroy the class, we agree that there are strong incentives for them to remain in the class. The participating underwriters gain economics of scale by remaining in the class. To the extent they will rely on the defense of due diligence of the lead underwriters, they will benefit be-

cause the lead underwriters, as class representatives, will lead the defense. Furthermore, although the participating underwriters will lose some control over the litigation, they will still retain a voice in settlement. *See In re Gap Stores,* 79 F.R.D. at 305. Therefore, because of these incentives, and because we have not received any evidence of any defendant's intention to opt out, we will not deny class certification on this basis.

### 3. *Miscellaneous Claims*

Besides attacking the above requirements for class certification, defendants also argue that the defendant class should not be certified because certification of a plaintiff class and a defendant class raises due process concerns. Finally, in the same vein, defendants argue that the class should not be certified as to the § 12(2) claim because that claim requires proof of privity between the plaintiffs and defendants and certification of a plaintiff class and a defendant class would effectively eliminate that requirement.

■ Certification of a defendant class and a plaintiff class is not automatically disallowed because of due process concerns. *See Henson v. East Lincoln Township,* 814 F.2d 410, 417 (7th Cir.1987) ("double class actions remain possible under [FED.R.CIV.P. 23](b)(3), as in *Appleton Electric Co. v. Advance–United Expressways,* 494 F.2d 126, 137 and n. 22 (7th Cir.1974)). However, "[b]efore certifying a defendant class, the court must carefully examine the impact of such certification on the rights of unnamed class members." *Akerman v. Oryx Communications, Inc.,* 609 F.Supp. 363, 375 (S.D.N.Y.1984). Certification of this defendant class as to all claims except the § 12(2) claim, which is addressed below, would not adversely impact the rights of the class members. *See Akerman,* 609 F.Supp. at 375 ("th[e] determination ... depends on the nature of the various claims and the statutory scheme of remedies"); *see also In re Itel Sec. Litig.,* 89 F.R.D. 104, 109–14 (N.D.Cal.1981) (certifying defendant class under § 11 of the 1933 Act); *In re Gap Stores,* 79 F.R.D. at 302–06 (same). This is not a case in which the class is random and attenuated. This purported class of 106 underwriters is dis-

crete and close-knit. Each underwriter is easily identified in this action. Each will receive the statutorily required notice of the class action. Each was a party to the "Agreement Among Underwriters" attached as an Exhibit to the plaintiffs' Reply Memorandum. Lastly, each will have the ability to opt out of the class. As such, due process concerns do not defeat class certification.

■ As to the § 12(2) claim, however, due process concerns are more pronounced. *Akerman* provides an example. In *Akerman,* the court refused to certify the defendant class based on a § 12(2) claim because some plaintiffs lacked privity with some defendants and no juridical link existed to create an exception. *Akerman,* 609 F.Supp. at 375. Although strict privity between plaintiff security purchasers and defendant sellers is not required under § 12(2), *see Pinter v. Dahl,* 486 U.S. 622, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988) and *Ackerman v. Schwartz,* 947 F.2d 841, 845 (7th Cir.1991), not every plaintiff here can recover from every defendant because not every defendant was a seller to every plaintiff. Furthermore, § 12(2) liability is not joint and several. Therefore, not every defendant will be liable to every plaintiff, which raises due process concerns regarding absent defendants being liable to absent plaintiffs.

Courts which have certified a defendant class under these circumstances, however, have found an exception to this general rule. Generally, this occurs where " 'an important legal relationship uniting the defendant underwriters and justifying class treatment' is shown to exist". *Akerman,* 609 F.Supp. at 375. Furthermore, according to *Akerman,* "[p]artnership [and] joint enterprise ... may serve as such a link, since they denote some form of activity or association on the part of the defendants that warrants imposition of joint liability against the group even though the plaintiff may have dealt primarily with a single member." *Akerman,* 609 F.Supp. at 375. Here, all the participating underwriters were parties to the Underwriting Agreement which contains certain indemnity and expense-sharing clauses. *See* AGREEMENT AMONG UNDERWRITERS, ¶¶ 6 and 8, attached as Exhibit A to Plaintiff's Reply

Memo. Therefore, this juridical link arguably exists here.

However, due to the inherent problems with and individualized nature of determining who was a "seller" under § 12(2) as to each plaintiff, *see Craig v. First American Capital Resources, Inc.*, 740 F.Supp. 530, 533–34 (N.D.Ill.1990), the defendant class will be certified under Count III only as to the issue of whether or not the alleged misstatements and omissions are material. *See* FED. R.CIV.P. 23(c)(4)(A) (allowing certification limited to participation issues); *In re Computer Memories Sec. Litig.*, 111 F.R.D. 675, 687–89 (N.D.Cal.1986) (certifying a defendant class under § 12(2) as to the limited issue of materiality). Issues of which defendants sold the securities to which plaintiffs for § 12(2) purposes can be made subsequent to any materiality decisions, if necessary, on an individual basis. Therefore, the defendant class will be certified with respect to Counts I, II, IV and V. The defendant class is certified under Count III only as to whether or not the alleged misstatements and omissions are material for § 12(2) purposes.

### III. *Conclusion*

For all the foregoing reasons, the plaintiff class is certified with Henry T. Endo as class representative. The defendant class is certified as proposed with the limitation that, as to § 12(2) liability alleged in Count III, the defendant class is certified only as to the issue of materiality of the alleged misstatements and omissions. Furthermore, certification of each class is hereby made conditional and subject to alteration or modification under FED.R.CIV.P. 23(c)(1).