Michael SEBO, individually, and Judith Thompson, individually, and as class representative on behalf of other similarly situated persons, Plaintiffs,

v.

Marc RUBENSTEIN, M.D.; Donald M. Norris, M.D.; David Goldrath, M.D.; Larry Gott, M.D.; Stone Centers of America, L.L.C., an Illinois Limited Liability Company; Urological Stone Surgeons, Inc. d/b/a Parkside Kidney Stone Center, a Delaware Corporation; Urological Services, Ltd.; and Kidneystone Management Corporation, individually and on behalf of others similarly situated, Defendants.

No. 98 C 8394.

United States District Court,
N.D. Illinois,
Eastern Division.

Sept. 8, 1999.

Michael Raymond Collins, Chicago, IL, Marvin Alan Miller, Patrick Edward Cafferty, Kenneth A. Wexler, Jennifer Winter Sprengel, Adam J. Levitt, Miller Faucher Hyman Cafferty and Wexler LLP, Chicago, IL, Joseph Peter Brent, Fumagalli Tecson & Brent Ltd., Chicago, IL, for Michael Sebo, individually, and Judith Thompson and as class representative on behalf of other similarly situated persons, plaintiff.

Anthony C. Valiulis John Hester Ward, Peter Dostal McWeeny, Much, Shelist, Freed, Denenberg, Ament & Rubenstein, P.C., Chicago, IL, for defendants.

Jack R. Bierig, Richard D. Raskin, Bruce Michael Zessar, Theodore R. Scarborough, Jr., Scott David Stein, Sidley & Austin, Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

LINDBERG, District Judge.

Plaintiff, Judith Thompson, brought this action based on allegations of a price-fixing conspiracy among urologists in the Chicagoland area who perform lithotripsy and related services. Defendant Parkside Kidney Stone Center, with facilities in Park Ridge and LaGrange, Illinois, performed more than 2,600 lithotripsy procedures in 1995; allegedly 68% of all such procedures performed in the Chicagoland area that year. Thompson seeks to certify a plaintiff class of lithotripsy patients and a defendant class of urologists/shareholders of defendants Stone Centers of America and Urological Stone Surgeons, Inc., pursuant to Fed.R.Civ.P. 23(b)(3).

■ The court has broad discretion to determine whether certifying a class is appropriate. *Keele v. Wexler*, 149 F.3d 589, 592 (7th Cir.1998). When deciding if certification is proper, the allegations in the complaint are taken as true and the ultimate merits of the case are not examined. *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 895 (7th Cir.1981), *cert. denied*, 455 U.S. 1017, 102 S.Ct. 1710, 72 L.Ed.2d 134 (1982). To achieve certification under Rule 23, plaintiff must first satisfy the four requirements of Rule 23(a): 1) class is so numerous that joinder of all members is impracticable (numerosity); 2) there are questions of law or fact common to the class (commonality); 3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and 4) the representative parties will fairly and adequately protect the interests of the class (adequate representation). *Rosario v. Livaditis*, 963 F.2d 1013, 1017 (7th Cir.1992), *cert. denied*, 506 U.S. 1051, 113 S.Ct. 972, 122 L.Ed.2d 127 (1993).

If the plaintiff satisfies all of these requirements, she is then required to satisfy one of Rule 23(b)'s requirements. *Retired Police Association v. City of Chicago*, 7 F.3d 584, 596 (7th Cir.1993). Thompson seeks certification pursuant to Rule 23(b)(3), which requires the court to find "that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3).

The class Thompson wishes to certify is "all persons who received lithotripsy professional services, lithotripsy machine services and anesthesia services at Parkside Kidney Stone Center during the period from January 1, 1985, through January 1, 1998 ...

Excluded from the plaintiff class are (i) the individual defendants; (ii) members of the individual defendants' immediate families; and (iii) officers, directors, employees and shareholders of the corporate defendants."

## I. The Plaintiff Class

### A. Requirements of Federal Rule 23(a)

#### 1. Numerosity

■ Plaintiff claims that this requirement is satisfied because the class is estimated to include approximately 25,000 members. Joinder is therefore impracticable and the class sufficiently numerous to satisfy Rule 23(a)(1). Defendants do not disagree that this number of class members satisfies numerosity, and the court finds that this requirement is indeed satisfied.

#### 2. Commonality

■ Beginning with Count I, price fixing in violation of the Sherman Act, plaintiff asserts that common proofs exist that will demonstrate that defendants conspired to raise, fix, maintain or stabilize prices for lithotripsy professional and machine services in the Chicagoland area. The elements of such a claim include 1) a contract, combination or conspiracy; 2) a resultant unreasonable restraint of trade in a relevant market; and 3) injury. *Rohlfing v. Manor Care*, 172 F.R.D. 330, 336 (N.D.Ill.1997). "The weight of authority in antitrust cases indicates that the question of the existence of a conspiracy in restraint of trade is one that is common to all potential plaintiffs, and the importance of this question usually warrants treating them as a class." *Id.* at 336–37. Plaintiff claims that this overriding common issue of conspiracy on the part of defendants predominates over individual issues such as damages. *United National Records, Inc. v. MCA, Inc.*, 99 F.R.D. 178, 182 (N.D.Ill.1983).

Under Count II, monopolization or attempted monopolization in violation of the Sherman Act, plaintiff alleges that she must prove: "1) possession of monopoly power in the relevant market and 2) the willful acqui-

sition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *Rohlfing*, 172 F.R.D. at 337. Plaintiff maintains that, like Count I, the question of whether defendants engaged in willful acquisition of monopoly power involves issues common to the class. Count III involves allegations of a "tying arrangement" or an "agreement by a party to sell one product but only on the condition that the buyer also purchases a different (or tied) product." *Eastman Kodak Co. v. Image Technical Services, Inc.*, 504 U.S. 451, 461, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992). Plaintiff alleges that she will rely upon common proofs to demonstrate that defendants agreed to perform lithotripsy services only if the patient agreed to purchase lithotripsy machines services and anesthesia services through Parkside.[1]

Defendants object to plaintiff's assertion that commonality is established. They claim that to satisfy Rule 23(b)(3), a plaintiff must demonstrate that the "fact of injury can be proved for the entire class by common evidence." *Glictronix Corp. v. AT & T Co.*, 603 F.Supp. 552, 586 (D.N.J.1984). "Proof of impact is not only essential to demonstrating defendants' liability under the antitrust laws, it is also the key element in determining whether common issues will predominate." *In re Domestic Air Transp. Antitrust Litigation*, 137 F.R.D. 677, 689 (N.D.Ga.1991).

This is not possible here, according to defendants, because this is not the typical class action antitrust case where the consumer/plaintiff paid the entire price for the good or service purchased from defendants. In such a case, impact can be proved by common proof because all consumers in the class suffered a common harm of paying too much. Defendants assert that the potential plaintiff class members in this action cannot prove such a harm because they did not pay the entire price for their lithotripsy procedure. Instead, a governmental or commercial third-party insurer paid most or all of the cost. Medicare and Medicaid set standard rates

---

1. Count IV, alleging violations of the Illinois Antitrust Act, largely mirrors the counts brought under the Sherman Act.

for lithotripsy services that are not subject to negotiation. *Rozema v. Marshfield Clinic,* 174 F.R.D. 425, 436 (W.D.Wis.1997) ("*Rozema I*") ("If the copayments made by plaintiffs are set by state of federal law, defendants' alleged market division would not have had any affect on these plaintiffs"). Even patients who were covered by a private health plan may pay nothing toward the cost of lithotripsy treatment or only of portion of the total charge. Therefore, defendants argue, the plaintiffs cannot prove impact or injury because any conspiracy did not affect the portion of the total charge that they were required to pay.

■ Plaintiff responds that common proofs will be offered to prove impact or injury and will establish that all plaintiffs treated at Parkside were economically harmed in the same manner. She maintains that defendant's argument is just a repackaging of the oft-rejected argument that the necessity of an individualized assessment of damages destroys commonality. It is clear that "the presence of individualized damages does not render the class unsuitable for certification." *Arenson v. Whitehall Convalescent & Nursing Home, Inc.,* 164 F.R.D. 659, 666 (N.D.Ill.1996).

■ To the extent that defendants allege that the variations at issue here go not to the individualized amount of damages but to the existence of injury at all, the court rejects the argument. Thompson alleges that she can prove fact of injury for the class by demonstrating that had a conspiracy not existed, the competitive price would have been lower than the prices paid during the class period. To the extent that defendant requires or argues more at this stage, the court finds that it is an inappropriate request for a determination on the merits.

The court also finds that the existence of third-party insurance carriers does not automatically defeat plaintiff's claim of injury. In *Domestic Air Transportation,* which defendants cite as support for their argument that commonality cannot exist on the element of injury, the court actually found that common issues did predominate over individualized ones, despite the variety of factors influencing airfare prices and the highly individualized question of damages. 137 F.R.D. at 690. "Under the conspiracy, plaintiffs contend, all [fees] were maintained at a level inflated above what would have existed in a competitive environment. Plaintiffs allege that defendants' actions thus resulted in an artificial 'base' price which became the 'benchmark' from which [fees] were negotiated or discounted." *Id.* at 689. The same argument can be applied to insurance rates. As defendants point out, "most health plans negotiate contractual rates that are lower than 'list' charges." While the ultimate agreed rate may indeed be lower than the "list" charge, a higher market rate that results from a conspiracy would indeed affect the negotiated rate for health plans in a given metropolitan area. This higher price may be passed along to the consumer in the form of higher insurance rates. As the insurance companies have no standing to sue for price-fixing, defendants' argument that the consumers are not impacted would render any such price-fixing conspiracy in the medical services field unreachable. The possibility that conspirators have spread increased costs among several parties should not be used to the bar a class action suit, which is an particularly appropriate vehicle for such a situation. *See Panache Broadcasting of Pennsylvania, Inc. v. Richardson Electronics, Ltd.,* 1999 WL 342392, *4, fn. 5 (N.D.Ill.) ("it seems unfair and ironic that the party who caused the complexity on liability and damages should benefit from such acts by disarming the plaintiffs and the court of the most efficient and effective tool for resolving these issues").

In addition, the parties do not address another possible impact on class members. While it is true that a health care plan, including Medicaid or Medicare, might set a ceiling on what it will pay for a service, a common situation is where the patient is responsible to the health care provider for the difference between what the provider charges and what the insurance plan will pay. For all of these reasons, the court finds that plaintiff has sufficiently alleged commonality as to injury or impact.

### 3. Typicality

Defendants contend that Thompson has failed to establish typicality because she has pled the doctrines of equitable tolling and fraudulent concealment in response to the defendants' affirmative defense of the statute of limitations. Defendants claim that these issues are not common to the class and would prejudice other class members if Thompson's claim was eventually dismissed or if a significant amount of time were spent on these issues.

■■■ Defenses that are unique to a named plaintiff are relevant to the inquiry into whether plaintiff's claims are typical but are not necessarily dispositive of the issue. *See Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 58 (N.D.Ill.1996). Claims that are adverse to other class members or an individual defense that would take a significant amount of time may destroy typicality. *See, e.g., J.H. Cohn & Co. v. American Appraisal Associates, Inc.*, 628 F.2d 994, 999 (7th Cir.1980). Defendants do not address the fact that the class period sought is from January 1, 1985, through January 1, 1998. This would apparently make the statute of limitations defense common for the class members who obviously would have received treatment more than four years before the suit was filed. They also do not address plaintiff's argument that a reasonable person exercising due diligence would not have acquired knowledge of a possible cause of action before January 1998, when the Federal Trade Commission publicly disclosed the consent decree it had entered into with Parkside.

■■■ The equitable tolling and fraudulent concealment defenses to the statute of limitations appear to involve factual issues related to proving the conspiracy. The court finds that these issues will not be so consuming that they will take the focus away from the merits of the case. *See Retsky Family Ltd. Partnership v. Price Waterhouse LLP*, 1999 WL 543209 (N.D.Ill.) (citations omitted). Thompson's claims are typical of the class's in that she alleges that she was a patient at Parkside and that defendants' alleged conspiracy to raise the prices for the services she received injured her.

### 4. Adequacy of Representation

■■■ To satisfy the adequacy requirement, Thompson must show that: 1) she does not have antagonistic or conflicting claims with other members of the class; 2) she has a sufficient interest in the outcome of the case to ensure vigorous advocacy; and 3) her counsel is competent, qualified, experienced and able to vigorously conduct the litigation. *Kriendler v. Chemical Waste Management, Inc.*, 877 F.Supp. 1140, 1159 (N.D.Ill.1995) (quotations and citations omitted).

Defendants devote a substantial portion of their 22–page response to the motion for class certification (as well as their surreply) to their argument that Thompson is an inadequate class representative because she "is nothing but a figurehead" and that she lacks the knowledge, ability, and willingness to supervise the conduct of this litigation. Defendants contend that plaintiff "has virtually no idea why she is suing defendants ... Thompson's lack of knowledge and understanding is so complete that when she asked if she had any complaints about the charges for her lithotripsy procedure at Parkside, she could not answer the question."

■■■ Because it finds that this argument is nothing more than a red herring, the court will not devote a similarly significant amount of page space to rejecting it. For a plaintiff who wishes to be a class representative, "(g)eneral knowledge [of the case] and a participation in discovery are enough." *Id.* Thompson's inability to articulate legal terms such as "price fixing" during her deposition does not persuade the court that she does not have a basic understanding of the underlying issues in the case. She appeared for her deposition and has indicated that she will vigorously prosecute this action. Although defendants fault her for her inability to monitor her counsel, citing her failure to read the pleadings and briefs in the case, and her uncertainty as to whether she would be responsible for costs in this case or what her potential share of recovery would be, such a level of knowledge and involvement is not required before the court can find that Thompson will provide adequate representation for the class.

Defendants also claim that Thompson is an inadequate class representative because she has conflicts of interest with other class members. They base this assertion on the fact that Thompson's sister works for a competitor of Parkside in the lithotripsy services field. It was Thompson's sister who first notified her of this litigation after seeing the complaint at work and speaking to an attorney on the case. Defendants assert that attorney Michael Collins and his father and law partner Harold Collins have a financial interest in another of Parkside's competitors, and that the Collinses and these competitors are the real parties behind this lawsuit.[2] They claim that this raises the possibility that "Thompson and her counsel's loyalty might be compromised by loyalty to competitors with interests that conflict with those of the class." Although a competitor's interests are not necessarily antagonistic to the class's interests, this concern is easily alleviated by the designation of Thompson's other counsel (Miller Faucher Cafferty and Wexler LLP) as counsel for the class. Miller Faucher is experienced in antitrust class action litigation and defendants do not dispute that they are "competent, qualified, experienced and able to vigorously conduct the litigation." *Id.* There is no allegation that Miller Faucher has any interest in any Parkside competitor and the firm was retained in this action on a contingency fee basis. Any compensation the firm receives will be based only on the recovery it achieves for the class. This agreement ensures its commitment to the interests of the class. The court finds that Thompson, represented by Miller Faucher, is an adequate class representative.

B. Predominance of Common Issues and Superior Method of Adjudication under Federal Rule 23(b)

Once the four elements of Rule 23(a) are satisfied, plaintiff must still establish that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient

adjudication of the controversy." Fed. R.Civ.P. 23(b)(3).

The requirement that questions of law and fact common to the class predominate over individual issues was already addressed in the discussion of commonality above. The court finds that the same considerations apply to satisfy the requirement here. The final question is whether a class action is a superior method of adjudication for this case. Plaintiff claims that although the class at issue is large, judicial economy and access to justice makes a class action the superior method of adjudication here.

Defendants claim that the fact that neither other patients nor any third-party payers have brought similar suits militates against certifying this matter as a class action, citing *Kassover v. Computer Depot, Inc.,* 691 F.Supp. 1205, 1214 (D.Minn.1987). Unlike the District Court of Minnesota in *Kassover,* however, this court is not troubled by the lack of similar actions. First, the allegations of fraudulent concealment until January 1998 would help explain the absence of similar cases. Also, defendants' assertions as to the distributed price impact among patients and health care plans that would result from a price-fixing scheme in this field provide a reason besides "lack of confidence or community of interests" for the nonexistence of similar cases. *Folding Cartons, Inc. v. American Can Co.,* 79 F.R.D. 698, 704 (N.D.Ill.1978). Class actions are especially suited for cases where each class member may have suffered a small individual loss but where the collective loss is large. *See Panache,* 1999 WL at *4, fn. 5 (class action allowed each class member to "have its day in court without filing a separate claim").

For the foregoing reasons, the court certifies a class consisting of all persons who received lithotripsy professional services, lithotripsy machine services and anesthesia services at Parkside Kidney Stone Center during the period from January 1, 1985, through January 1, 1998. Excluded from the plaintiff class are (i) the individual defen-

---

**2.** In plaintiff's reply, she indicates that only Harold Collins has an interest in Hawthorne Litho-

triper Partners, one of Parkside's competitors.

dants; (ii) members of the individual defendants' immediate families; and (iii) officers, directors, employees and shareholders of the corporate defendants.

## II. The Defendant Class

■ Plaintiff also seeks to certify a defendant class pursuant to Fed.R.Civ.P. 23(b)(3) of all urologist/shareholders of defendants Urological Stone Surgeons, Inc. (USS) and Stone Centers of America, L.L.C. (SCA), with the named defendants serving as class representative. Although Rule 23 contemplates certification of defendant classes as well as plaintiff classes, such certification raises due process concerns that do not exist when certifying plaintiff classes.

■ Plaintiff concedes that the majority of courts have concluded that a defendant class should be certified only where the plaintiff class has a colorable claim against each member of the defendant class. *Thillens v. Community Currency Exchange Assn.*, 97 F.R.D. 668, 675 (N.D.Ill.1983). In antitrust price-fixing cases, though, where each participant in a conspiracy is jointly and severally liable to victims of the scheme, a plaintiff such as Thompson would have a claim against each member of the defendant class even though she only dealt with two of the doctors alleged to be part of the conspiracy. *In re Uranium Antitrust Litigation*, 617 F.2d 1248, 1257 (7th Cir.1980).

As to other issues of fairness and due process, plaintiff asserts that all members of the defendant class transacted business in this district and are subject to *in personam* jurisdiction here; and that the representation of the defendant class's interests is adequate. *See Thillens*, 97 F.R.D. at 675. Because the certification sought is pursuant to Rule 23(b)(3), plaintiff claims that all defendant class members will receive actual notice of the action and may appear individually through their counsel if dissatisfied with the defendant representative's defense of their interests. This alleviates the due process concerns defendants raise. *Endo v. Albertine*, 147 F.R.D. 164, 172 (N.D.Ill.1993). As is the case with certifying a plaintiff class, plaintiff must also satisfy the four elements of Rule 23(a) and the requirements of Rule 23(b)(3).

## A. Requirements of Federal Rule 23(a)

### 1. Numerosity

■■ Plaintiff claims that this element is met because USS had approximately 35 shareholders and SCA has approximately 66, bringing the total class number to approximately 101. To establish numerosity, "impracticability of joinder must be positively shown." *Abt v. Mazda American Credit*, 1999 WL 350738, *4 (N.D.Ill.). Defendants allege that numerosity is not so easily met for defendant classes as it is for plaintiff classes, although they cite no case law for this proposition. In fact, the court in *Abt* observed that for defendant classes, the number required to satisfy numerosity is customarily lower than it is for plaintiff classes. *Id.* (citing Newberg on Class Actions, § 4.56, 4–215 (3d Edition)). Defendants also claim that because all class members are amenable to service of process, joinder would be clearly practicable. A class of 25 dealerships throughout the state of Illinois was enough to satisfy the numerosity requirement. *See also Endo*, 147 F.R.D. at 171 (106 in defendant class satisfied numerosity); *Reich v. ABC/York–Estes Corp.*, 1997 WL 321699 (N.D.Ill.) ("50 potential [intervenor-defendant] class members is sufficient to render joinder unwieldy and impracticable"). The contention that joinder is possible here does not necessarily lead to the conclusion that it would be practicable. The court finds that joinder of the 101 class members as defendants is sufficiently impracticable to meet the numerosity requirement.

### 2. Commonality and Typicality

■ Plaintiff asserts that, as with the plaintiff class, common issues concerning the existence of a conspiracy dominate this litigation. Defendants respond that "vexing individualized factual issues" predominate concerning each class member's participation in the alleged conspiracy, barring a finding of either commonality or typicality. The analysis is similar to the finding of commonality for the plaintiff class. Individual issues do not necessarily preclude a defendant class when the "paramount representative" de-

fense is to deny that a conspiracy existed. *Thillens*, 97 F.R.D. at 678. "(A)ll the issues common to establishing antitrust violations are overriding. The only noncommon issue will be the individual members' defenses of nonparticipation." *Id.* at 682. A single common legal issue satisfies the requirement of commonality even if individual claims and defenses also exist. *Eggleston v. Chicago Journeymen Plumbers*, 657 F.2d 890, 896 (7th Cir.1981), *cert. denied*, 455 U.S. 1017, 102 S.Ct. 1710 (1982). As to typicality, defendants have asserted no unique defense that would vitiate the typicality requirement. Nor does any defendant representative have an interest that is adverse to other class members. For these reasons, the court finds that both commonality and typicality are satisfied as to a defendant class.

### 3. Adequacy of Representation

■ Because the corporate defendants, Rubenstein and Norris are alleged to be the primary orchestrators of the scheme, plaintiff states that they have every incentive to defend the action vigorously and will provide adequate representation for the defendant class. Defendants claim that they lack sufficient knowledge as to the activities of the other investors to be class representatives. The existence of some individual issues, however, does not defeat commonality or typicality. It therefore would not be sufficient to render Rubenstein and Norris inadequate class representatives.

The defendants have no interests in the suit that are antagonistic to the interests of the class members. Indeed, in correspondence with defendant class members, Rubenstein and Norris indicated that they intended to "vigorously defend" the case. They have retained competent counsel to enable them to do so. Class members who are dissatisfied with the representation defendants provide would also still have the choice of opting out of the class. For these reasons, the court finds that defendants are adequate class representatives.

### B. Predominance of Common Issues and Superior Method of Adjudication under Federal Rule 23(b)(3)

■ Plaintiff must again establish—this time as to the defendant class—that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). Defendant claims that the dominant issues are the individual defenses, which are not common to the class. Plaintiff disagrees, claiming that the common issue is whether the defendants conspired to fix, maintain or stabilize prices for lithotripsy services. The court agrees that the overriding issue is to prove that a conspiracy existed and that this issue predominates over any individualized inquiries.

■ As to whether a class action is a superior method of adjudication, plaintiff points to the options available should a defendant class not be certified: 1) name all 101 urologist/shareholders as defendants; or 2) forego claims against them altogether. Compared with these choices, plaintiff claims that a defendant class is a more efficient method of resolving the claims for both the plaintiff and the defendant classes. The possibility that defendant class members may choose to opt out does not necessarily defeat a claim that a defendant class provides a superior method of adjudication. *See Endo*, 147 F.R.D. at 171. The court is free to modify the class should this problem arise. *Id.* It also finds it unlikely as the class members choosing to opt out face the possibility (and cost) of a separate litigation.

The court finds that it is possible that plaintiff would forego claims against the defendant class members should a class not be certified. If she indeed undertook separate lawsuits, however, this district would have approximately 100 similar actions to contend with. The court does not view either alternative as superior to a class action. A defendant class would also prevent an individual defendant from providing the entire cost of defense. *See Thillens*, 97 F.R.D. at 682.

For the foregoing reasons, the court certifies a defendant class consisting of urologist/shareholders of defendants Urological

Stone Surgeons, Inc. (USS) and Stone Centers of America, L.L.C. (SCA) during the period from January 1, 1985, through January 1, 1998.

**ORDERED:** The court grants plaintiff's motion for class certification as to the plaintiff class and the defendant class.